IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
February 15, 2002 Session

## PERRY MARCH v. LAWRENCE LEVINE, ET AL.

**Appeal from the Circuit Court for Davidson County**
**No. 99P-1676     Frank G. Clement, Jr., Judge**

---

**No. M2000-01955-COA-R3-CV - Filed March 17, 2003**

---

This matter is a dispute between Absentee Janet March's parents, Lawrence and Carolyn Levine, and her husband, Perry March. The case began as an in rem battle over the Absentee's property after Perry March opened an absentee estate following Janet's disappearance. However, the Levines, thirty-one months after the absentee estate was opened, asked to amend the proceedings and add a claim for wrongful death against Perry March. The court allowed the amendment. Perry March incurred citations for civil contempt of court, and the Levines were eventually granted a default judgment as a result of his contempt. A judgment for $113,500,000.00 in damages was entered against him. Perry March appealed. We find that the trial court abused its discretion in allowing the wrongful death action, and we reverse the trial court. The default judgment for wrongful death and the award for damages against Perry March are reversed.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Reversed**

WILLIAM B. CAIN, J., delivered the opinion of the court, in which BEN H. CANTRELL, P.J., joined. JEFFREY F. STEWART, SP. J., filed a dissenting opinion.

John E. Herbison, Nashville, Tennessee, for the appellant, Perry March.

C.J. Gideon, Jr. and Margaret J. Moore, Nashville, Tennessee, for the appellees, Lawrence Levine and Carolyn Levine, as Next Friends of Janet Levine March, as Next Friends of Samson March and Tzipora March; Children Janet Levine March, and in their Individual Capacities.

### OPINION

Much of the history of this protracted litigation can be gleaned from the opinion of this Court in *March v. Levine*, No. 01-A-01-9708-PB-00437, 1999 WL 140760 (Tenn. Ct. App. March 17, 1999), the opinion of the United States District for the Middle District of Tennessee in *March v. Levine*, 136 F. Supp. 2d 831 (M.D. Tenn. 2000), and the opinion of the United States Sixth Circuit Court of Appeals in *March v. Levine*, 249 F.3d 462 (6th Cir. 2001).

Perry March and Wife, Janet Levine March, are parents of two minor children, Samson and Tzipora March. Lawrence and Carolyn Levine are the parents of Janet Levine March and the maternal grandparents of the two minor children.

Janet Levine March disappeared on August 15, 1996. Perry March, a Nashville lawyer, soon became the subject of an intense investigation into his wife's disappearance. The body of Janet Levine March (assuming her to be deceased) has never been found.

The seed of this litigation, which was destined to mushroom into a figurative giant sequoia, was planted by Perry March on October 30, 1996 when he filed, in the Probate Court for Davidson County, Tennessee, a Petition for Summary Relief pursuant to Tennessee Code Annotated section 30-3-203 seeking the transfer to him of two bank accounts totaling $4,770.19, held by Union Planters National Bank in the name of Janet Levine March.[1]

Title 30 Chapter 3 of Tennessee Code Annotated entitled Absentee's Estates is codified in two sections, the first section being the Uniform Absence as Evidence of Death and Absentees' Property Law originally enacted as Chapter 102 of the Public Acts of 1941. Tenn. Code Ann. § 30-3-101 to 114. Part two, entitled Conservators, is derived from Chapter 785 of the Public Acts of 1972 (adj. S.). Tenn. Code Ann. § 30-3-201 to 210.

Tennessee Code Annotated section 30-3-203 provides for the transfer of property without conservatorship to the spouse or next of kin of any "absentee" as defined in section 30-3-201 of the Code, where the property has a gross value of less than $5,000. An "absentee," as applicable in this case, is defined as "[a]ny resident of this state, or any person owning property herein, who disappears under circumstances indicating that he may have died, either naturally, accidentally or at the hand of another, or may have disappeared as the result of mental derangement, amnesia or other mental cause." Tenn. Code Ann. § 30-3-201(2)(1984).

Although Code section 30-3-203 authorized the court to make the transfer of these accounts without notice or a hearing because the accounts contain less than $5,000, the court, nonetheless, set a hearing and notified the Levines. On November 6, 1996, Lawrence and Carolyn Levine filed an intervening petition in the probate court as next friends and parents of Janet Levine March and grandparents of Samson and Tzipora March in which they denied that Perry March was entitled to summary relief under section 30-3-203 of the Code and asserted:

4. The Absentee has been missing since August 15, 1996. Despite an intense search, the governmental authorities have been unable to locate her. According to public statements of the Metropolitan Police Department, the Petitioner is the only known suspect in her probable death. Contrary to the signed pleadings of Petitioner

---

[1] This petition also sought the transfer to Perry March of custodial rights in two other accounts at Union Planters National Bank held pursuant to Tennessee Uniform Transfer to Minors statutes. These accounts are not material to the issues in the case.

that Petitioner has searched for his wife, he has in fact made no public efforts to search for her and he has impeded the police investigation by refusing to have any communication or discussion with the Metro Police; he has refused to answer any further questions or meet with them after their initial investigation or help search for her.

In sworn testimony taken in the cause of No. 9619-29147, <u>Lawrence Levine and Carolyn Levine v. Perry March</u>, Juvenile Court of Davidson County, Tennessee, he has refused to answer any questions regarding the disappearance of his wife on the grounds that it would tend to incriminate him under the 5th Amendment of the Constitution of the United States; he has refused to answer any questions regarding her disappearance or her probable death, and he has not cooperated with anyone in the search for her.

5.      The two accounts described are accounts belonging to Janet Gail Levine March, his spouse, and if he is the person who has committed a homicide with regard to her, he cannot receive or inherit any property by virtue of T.C.A. § 31-1-106. Pursuant to T.C.A. § 31-1-106, if Perry A. March shall have been the person who killed or conspired to kill or procured to be killed Janet Gail Levine March, in that event he could not receive any part of the money owned by Janet Gail Levine March. The money that belongs to her should be held by the Public Guardian Ronald Nevin, an independent neutral party, or some other neutral party, as conservator under T.C.A. § 30-3-202 or T.C.A. § 30-3-204 for her benefit until further facts and circumstances be established as to her disappearance or death.

. . . .

1.      The Petitioner has unclean hands, for he refuses to divulge to any appropriate governmental body or the courts of this state the facts and circumstances regarding the disappearance of his wife, Janet Gail Levine March.

2.      Pursuant to T.C.A. § 31-1-106, Petitioner could not inherit or hold funds belonging to her or be an appropriate fiduciary for his two minor children, if he be guilty under said statute.

3.      The Petitioner is not residing at the home at 3 Blackberry Road, Nashville, Tennessee, 37215, the phones have been disconnected, the door locks have been changed, and he apparently is spending a great deal of his time in Illinois and may not be subject to process under the State of Tennessee.

4.      As a matter of equity, the Court should freeze the funds of Janet Gail Levine March and the two minor children until such time as all facts and circumstances regarding her disappearance, her possible death, and the relationships of Janet Gail Levine March, Perry A. March and the two minor children be fully established.

At this point, we interrupt the chronological narrative in order that the reader may understand the context in which subsequent events have occurred and recognize the enormity of the task confronting the trial court.

THE ACRIMONIOUS RELATIONSHIP BETWEEN THE PARTIES

Lawrence and Carolyn Levine are convinced beyond any reasonable doubt that on August 15, 1996 Perry March murdered his wife, Janet Levine March, and disposed of her body thereby depriving them of a daughter and depriving their grandchildren of a mother. With equal fervor, Perry March denies any involvement in the disappearance of Janet March and denies that she is deceased. The resulting antagonism between the parties permeates every phase of this litigation and shows no sign of ever abating.

The trial court, more than five years ago in its order of September 10, 1997, clearly recognized what was happening and warned of the dire consequences that would result to the absentee Estate of Janet March if the litigious behavior of the parties continued.

The funds available at the time of the hearing, August 15, 1997, after payment of the mortgage but prior to payment of any of the fee requests is approximately $320,000, will be quickly depleted unless substantial changes occur in the litigious protocol established by Mr. March and the Levines.

The Court agrees with all parties that the fees at issue are more than substantial and is most concerned that the intensely contested proceedings, being the obvious and direct result of the animosity between Mr. March and the Levines and with almost every issue being vigorously contested, will deplete the resources of the Absentee's estate within a few months unless Mr. March and the Levines cease, or at least substantially minimize, the intense litigation that has become the norm in this most tragic case.

The Uniform Absence as Evidence of Death and Absentees' Property Act (the "Absentee Act") was enacted to provide for an orderly management of the affairs of persons who have disappeared, leaving families and property. As long as it is unknown whether the absentee be living or dead, rights must remain uncertain yet property must be managed. As stated by the National Conference of Commissioners on Uniform State Laws in its prefatory note at the time the Absentee Act was approved:

It is unthinkable - the situation intolerable - where in case of an absentee, with absence unexplained, continuous, unheard of, leaving a family to be supported, debts to be paid and collected, life insurance to be paid, business to be carried on, etc., that there be no law for the ascertainment of rights and the distribution of property. The situation calls for a remedy and this Act provides it.

Uniform Absence as Evidence of Death and Absentees' Property Act, 8A U.L.A. 1 (Master ed. 1993).

Though the Conservator is admirably performing his duties, his efforts to preserve the estate and his willingness to evaluate the need for and to provide financial support for the Absentee's dependents (if and when it is pursued in the proper fashion and with the requisite proof of need for support) are clearly being complicated by the

differences between the Levines and Mr. March. One of the more important purposes of the Absentee Act, to provide financial support for dependents, is particularly being frustrated by the acts and omissions of Mr. March. Mr. March has twice filed a claim for dependent support yet he has twice voluntarily dismissed the claims prior to the hearing. His acts, i.e. being litigious about most everything in these proceedings (though he is not alone in this area), and his election to repeatedly file and dismiss claims for support for himself or his children, present a troubling scenario that may result in the children receiving no financial support from their mother's Absentee estate.

One can foresee a disturbing result if there is no change. In the not too distant future, the [estate in this case] will be depleted without the dependents receiving any support as contemplated in the Absentee Act. Thereafter, the Court will likely be faced with a petition to sell the personal property of the Absentee, many of which are cherished personal possessions. If such should occur, the strong feelings and difficulties presented with the sale of the real estate will pale in comparison to the feelings likely to erupt with the sale of personal property of Janet Levine March.

Such consequences must be avoided if at all possible and this Court intends to be proactive in anticipation of and to endeavor to prevent such a regrettable and avoidable event.

The acts and omissions of Mr. March, along with other factors, may cause all who participate in these important proceedings to be viewed with disdain by those who wonder who was looking after the children's interest while the money was being spent. There is no doubt whatsoever that Mr. March loves his children. There is no doubt whatsoever that Lawrence and Carolyn Levine love their grandchildren. There is no doubt that the Conservator is admirably performing his duties. Nevertheless, the incessant legal battles between Mr. March and the Levines will exhaust the estate of the Absentee in short order unless a substantial change occurs.

However unfavorably this record reflects upon Perry March, one vital fact remains unchallenged. He has never been convicted of anything. In the eyes of the law, through which eyes alone this Court, and all other courts, must view the unfolding scene, Perry March is innocent of the charges leveled against him by the Levines and will remain so unless and until he is indicted, tried and convicted of such charges. Being overbearing and obnoxious, as well as in repeated civil contempt of court, does not equate to criminal conviction. The decision of this Court is made after careful consideration of the issues and not because of Perry March, but in spite of him.

Returning to the narrative, Judge Clement heard the original Petition of Perry March and the Intervening Petition of Lawrence and Carolyn Levine on November 6, 1996, and immediately recognizing the hostility between the parties, declared Janet Levine March to be an "absentee" within the provisions of Tennessee Code Annotated Title 30. He also appointed Honorable Jeff Mobley of the Nashville Bar as conservator of the absentee's estate of Janet Levine March.

This Order, entered November 12, 1996, began thirty-one months of what can only be described as trench warfare, with the Levines and Perry March fighting each other at every opportunity while the conservator made valiant efforts to preserve the ever diminishing estate of the absentee and the trial court sought in vain to control the proceedings. Respite for the absentee estate came on July 16, 1999, when the Levines changed course through an Amended Intervening Petition and Cross-Claim asserting, for the first time, a claim against Perry March for the wrongful death of Janet Levine March. It is this Amended Intervening Petition and Cross-Claim that forms the basis of the present appeal.

In order for the ruling of this Court to be clearly understood, it is necessary to recount, as concisely as possible, the events that occurred between the appointment of the conservator on November 12, 1996, and the filing of the Amended Intervening Petition and Cross-Claim on July 16, 1999.

The original transcript, filed in this Court pursuant to designations of counsel for Perry March, discloses that Mr. March was allowed to dismiss his claims filed under Tennessee Code Annotated section 30-3-203 by order of December 9, 1996. On January 16, 1997, Perry March filed, pro se, a claim for "an undivided, absolute and uncontested marital interest in all of the Property of his wife, Absentee Janet Gail Levine March, including, but not by way of limitation, all real property, personal property, tangible property, intangible property, contingent or actual in nature and extent." On August 13, 1997, the Levines filed a Petition seeking to hold March in contempt of court for failure to deliver personal property of the Levines to them at his home in Chicago, Illinois as required by previous order of the court, and on September 8, 1997, the Levines filed a Supplemental Motion for Sanctions for his willful refusal to continue with his discovery deposition as well as a Supplemental Petition to Hold March in Contempt of Court for failure to deliver to the Levines personal property pursuant to orders of the court.

By order entered September 10, 1997, the court approved fees for the conservator, including within the order his prophetic admonition to the Levines and March about litigious dissipation of the absentee estate.

On September 17, 1997, March filed his Answer to Charges of Contempt and for Sanctions. On September 23, 1997, the Levines filed their Answer to the Response of March.

All pending matters were heard by the trial court on September 24, 1997, where upon the court continued contested matters until October 28, 1997 because of a conflict affecting Mr. March. The Order entered subsequent to the September 24, 1997 hearing provided in part:

> Counsel for the respective parties in interest also announced in open Court certain agreements regarding custody and ownership of items of personal property currently or formerly belonging to the Absentee, Janet Gail Levine March. These announcements and the Court's action based upon such announcements are as follows:

A.     Counsel for Perry March stated in open Court that Perry March is withdrawing his objection to the claim of Lawrence Levine that he is the owner of the "Two Lawyers" painting which was painted by the Absentee, Janet Gail Levine March. Based upon such announcement and the agreement of the parties in interest as announced by their counsel, the Court hereby declares that all right, title and interest in that painting created by Janet Gail Levine March and titled "Two Lawyers" be and hereby is vested in Lawrence E. Levine.

B.     Counsel for Perry March announced in open Court that Mr. March is moving to dismiss, voluntarily and with prejudice, his appeal from the Court's Order of July 21, 1997. In view of that announcement, and there having been no objection stated to the dismissal of this appeal it is, ORDERED that said appeal be and hereby is dismissed with prejudice with the costs of that appeal being divided equally between Perry March and the Estate of the Absentee, Janet Gail Levine March.

C.     The Conservator announced in open Court an agreement among all parties in interest that, subject to the applicability to such property of that Bailment Agreement referred to in prior Orders of this Court and the execution by Mr. March of an appropriate UCC-1 reflecting the fact that these articles remain the property of the estate, Mr. March may have custody of the following items of personal property of the Absentee:

1.     The bag of lace tablecloths and doilies as referred to in Item 7 of Exhibit A to March's "Motion to Tender Certain Items of Personal Property," etc.

2.     The "linens" as referred to in Item 8 of Exhibit A to Mr. March's Motion. (It was expressly agreed that Mr. March would not receive the quilt referred to in Item 8 but only the "linens.")

3.     Two Mezzuzahs which were formerly located at the home on Blackberry Road where Perry March and the Absentee formerly resided, as referred to in Item 12 on Exhibit A to Mr. March's Motion.

4.     Two light fixtures which were formerly located at the home on Blackberry Road where Mr. March and the Absentee formerly resided as referred to in Item 12 of Exhibit A to Mr. March's Motion.

5.     A drawing of a man at a dessert cart.

6.     A framed article from a magazine showing the drawing of the man at the dessert cart.

7.     Those pictures from the wedding of Janet March and Perry March which depict Perry March and/or members of his immediate family but no other pictures from that wedding.

With the exception of these enumerated items of personal property as to which the parties have agreed that Perry March may have custody, the relief sought by Perry March in his "Motion to Tender Certain Items of Property," etc. referred to above is found by the Court not to be well-founded and is hereby denied.

Based upon the Conservator's request in open Court, the Court instructs the Conservator that, with the exception of the Absentee's business records, the Conservator may deliver all items of the Absentee's personal property which the

Conservator still possesses and which are not otherwise dealt with in this Order, to Lawrence and Carolyn Levine to be held by them pursuant to the terms of the pertinent Bailment Agreement.

Based upon the Conservator's request in open Court, and without objection having been made by any party, the Court instructs the Conservator that, with respect to those items of personal property set forth in Exhibit B to the Conservator's Report and Recommendation, filed June 26, 1997 and addressed in Paragraph 3 of the court's July 21, 1997 Order the Conservator may dispose of those items as he sees fit, including but not necessarily limited to donating those items to charitable organizations or needy persons. In that regard the Court finds that Perry March has failed to take possession of those items and remove them from storage at his expense within the time allowed for those purposes in this Court's July 21, 1997 Order.

Except as expressly set forth herein the disposition of the Absentee's personal property provided for in the Court's Final Order of July 21, 1997 shall not be affected.

Counsel for the parties in interest stated in open Court that, with the exception of certain items of children's cutlery discussed below, all of those items of personal property listed on Exhibit A to the Conservator's Report and Recommendation under the headings "Carolyn's/Larry's" or "Mark's" will be delivered by Perry March to the residence of Lawrence and Carolyn Levine in Deerfield, Illinois on October 6, 1997 at 10:00 a.m. local time in Deerfield, Illinois. Based upon the agreement of all parties, it is ORDERED that Perry March will bring such items of the children's cutlery shown on Exhibit A in the Conservator's Report and Recommendation with respect to which he believes he should retain possession with him to the hearing which has been scheduled before this Court at l0:00 a.m. on October 28, 1997. At that hearing, the Court will hear evidence and determine what party is entitled to ownership and possession of these items of personal property.

Counsel for Perry March further stated in open Court that Mr. March does not have the Encyclopedia Britannica owned by Dr. Howard Rosenblum which is listed on Exhibit A to the Conservator's Report and Recommendation.

Based upon the statements of counsel in open Court, the Court finds that Lawrence and Carolyn Levine have exercised their right as provided for in the Court's July 21, 1997 Order to request that documents, scrapbooks or memorabilia belonging to the Absentee and in the custody of Perry March in Illinois be made available to them for copying at their expense. The Court therefore ORDERS that Perry March make such property available to the Levines for such purpose not later than October 15, 1997. Such property includes but is not necessarily limited to those items contained in boxes marked "Kit Desk #1," "Kit Desk #2," and "Box #3" on page 2 of Exhibit A of the Conservator's Report and Recommendations. To such extent as the Levines wish to request access to other items in Mr. March's custody they will provide Mr. March's attorney with a list of such items in a timely manner.

The Conservator stated in open Court that, with respect to those items set forth on page 2 of Exhibit A to the Conservator's Report and Recommendations (other than the 1996 Volvo 850) Perry March has complied with the requirements set forth in

Paragraph 2 of the Court's July 21, 1997 Order that he list specifically which of those items he is retaining and how they are being used or displayed. The Court accordingly instructs the Conservator to permit Perry March to retain custody of those items pursuant to the terms of the Bailment Agreement which he has executed.

On October 22, 1997, an Amended and Supplemental Petition by the Levines was filed seeking to hold Perry March in contempt of court relative to the delivery of certain personal property and asserting:

1.      The quilt delivered was not the cross-stitched baby quilt described. Another quilt was delivered which was the wrong one and will be returned to Mr. March.

2.      The bag delivered was not the black-beaded evening bag described. Another bag was delivered which was the wrong one and will be returned to Mr. March.

3.      The Mind over Platter Cookbook was not delivered.

4.      The two photo albums had many pictures taken out and left blank.

5.      With respect to the furniture belonging to Mark Levine, a drawer from the antique secretary was shattered and broken in places.

6.      The matching vanity dresser had a piece of wood broken off.

7.      The wooden footstool was not delivered.

8.      The encyclopedias were not delivered.

The Levines filed a Memo Brief regarding sanctions and contempt of court of Perry March on December 8, 1997, after asserting the failure of Mr. March to complete his deposition. The Memo contains the following:

He was required by the Court to produce the Levines' furniture in Chicago, Illinois, on August 5, by agreement as set out in a court order. He did not do so. He had previously shipped the Levines' furniture down to Hammond, Indiana several weeks prior thereto. He obviously knew where it was and failed to reveal such. Instead, he had his brother send them a fax the day before the pick up date telling them to go to Hammond, Indiana to a strange place to pick up their furniture. The Levines should not be forced to go to a strange place in another state, when Mr. March had control of the items in his own household, and for his own unknown reasons had shipped them down to a commercial establishment in Hammond, Indiana.

The contempt was clearly a failure to follow the court order, and secondly, he was trying to force them into picking up the furniture with a truck at another place. Subsequently, after he was required by the court order of September 24 to have the furniture delivered to the Levines at their condo in Deerfield, Illinois he did not deliver certain items in good condition and he delivered several items that were not correct. Even though a supplemental petition was filed setting forth what happened, he has never tried to produce the correct items, nor has he offered to pay for the

damage that was (apparently) created by the shipment down to Indiana and the shipment back from Indiana. He tries to excuse his conduct on the basis that he saw or may have seen the shipment after it came back from Indiana, but his testimony was so confusing on this point that it is not worthy of belief. He had the items picked up and moved to another state and re-returned at his own risk and yet he never did try to inspect to see if they were in good condition when brought back to Deerfield, Illinois. He has to bear the responsibility. Secondly, he has to bear the responsibility of not furnishing the correct items after being warned in a supplemental petition that he still failed to comply. We believe these actions are all a part of a continuing pattern of willful contempt. His testimony is attached.

Finally, he has yet to this date, turned over the kitchen boxes (kit boxes), with the items of great sentiment and memory, which he was ordered to produce for the Levines' inspection and copying on September 24. His attorney, Ron March, was given two alternatives by letter of Harris A. Gilbert dated October 15. On December 3, we received a fax indicating the items would be shipped soon, but they have not arrived.

On January 26, 1998, March filed his Reply Memorandum Regarding Sanctions and Contempt of Court. In this memorandum, Mr. March observes:

There is also testimony that certain items that were finally delivered in a timely fashion were not in good condition, and Mr. March delivered several items that were not correct. The testimony of Mr. March under oath at the most recent hearing indicates that he delivered the items in the condition that they were given to him and that, again, he did not engage in any contemptuous conduct.

The Petitioners base a substantial part of their argument that Mr. March has engaged in a continuing pattern of willful contempt. It is now acknowledged by all parties that the kit-boxes were timely delivered to the Petitioners, along with at least one or two items that did not appear by means of a good faith mistake in the earlier delivery of the property to Deerfield, Illinois. Any further hearings on this matter would also indicate that the kit-boxes remained in Mr. March's attorney's office for some time awaiting representatives of the Petitioners' to give instructions as to where they should be delivered or to be picked up by the Petitioners.

The Levines filed an Addendum response on February 11, 1998 to the Perry March brief asserting, in part:

In our original Brief, we pointed out the damage that had occurred with regard to the antique secretary and antique vanity desk belonging to the Levines. We overlooked the fact that these items were videotaped by the Levines in Chicago many months ago, long before Mr. March shipped them to Hammond, Indiana, and that he has the responsibility for delivering same back in good condition. He has not to this date offered to repair the damage or fix the items.

-10-

Although the "kit boxes" have been sent to Jeff Mobley, the following items are still in Mr. March's possession <u>after</u> he was at the last court hearing and warned to return same to the Levines:

A.   Black-beaded evening bag with multi-colored flowers belonging to Mrs. Levine.

B.   The cross-stitched baby quilt with nursery rhymes hand-sewn by Janet's grandmother.

C.   A wooden footstool with woven twine top.

D.   It is still unexplained as to what happened to the <u>Encyclopedia</u> <u>Britannica</u>.

On July 15, 1998, the trial court entered an extensive Memorandum Opinion and Order finding Perry March in civil contempt of court relative to the delivery of personal property, observing:

This Court finds the specific instances referenced above to be but a few examples of Mr. March's consistent noncompliance with court orders in this case. Furthermore, this Court finds that Mr. March's attempts to explain his failure to comply with the July 21 Order unsatisfactory and unconvincing. The Court further finds these events to constitute a troubling and consistent pattern of contemptuous conduct, of which there is clear and convincing evidence to conclude that Mr. March is in contempt of Court. Sadly, in a case where the Court has already commented on the detrimental effect of high litigation costs on the Absentee's estate, Mr. March's conduct has had the effect of turning a relatively simple matter, (e.g., the return of specifically described personal property, on a specific date, at a specific time, at a specific location) into a very protracted and intensely litigated affair.

In the same Order, the court imposed T.R.C.P. Rule 37 sanctions against Mr. March because of his behavior during the course of his deposition and his action in terminating the deposition by walking out. Considering the entirety of this order of July 15, 1998, it is an understatement to observe that the trial court found Perry March not to be a credible witness. On January 20, 1999 the court entered an Order finding Mr. March to be in civil contempt of court and fined him $50 per day until "Perry A. March returns to the Levines the beaded bag, and the hand-stitched quilt belonging to the Levines. Said judgment shall also continue until Perry A. March pays the appropriate sum to the Levines for the repair and refinishing of the Levines' furniture, which Perry A. March damaged."

Such is a condensed synopsis of the original transcript filed under designation of Appellant covering the thirty-one month period between the appointment of the conservator and the filing of the Amended Intervening Petition and Cross-Claim asserting a wrongful death action against Mr. March.

Under designation of the Levines, a Supplemental Record was filed on appeal adding additional documents to the record, which are described in the supplemental transcript as follows:

1. 11/15/96 Affidavit of Harris Gilbert setting forth Defendant March's refusal to appear for his deposition while in Nashville;

2. Levines' 11/15/96 Motion for Sanctions against Defendant March, including letter dated 11/6/96 and deposition pages, regarding Defendant March's refusal to appear for his deposition while in Nashville;

3. Defendant March's 11/22/96 Motion to Terminate Deposition, including Affidavit, and 11/27/96 Order requiring Defendant March's attendance at deposition;

4. 12/23/96 Order awarding sanctions against Defendant March for failure to attend deposition;

5. Exhibit 8 to Court hearing of 2/14/97 filed on 3/17/97 regarding a listing of Levines' personal property taken by Defendant March to Chicago to be returned to Levines;

6. Levines' 3/18/97 Supplemental Response regarding sanctions for Defendant March's failure to deliver Levines' property as ordered by the Court;

7. 3/19/97 Order granting permission to take Defendant March's deposition but not allowing questions about the death of Janet Levine March;

8. 3/31/97 Order, stating that Defendant March failed to comply with prior Court Order concerning return of Levines' personal property and allowing Levines to videotape personal property at Defendant March's Chicago residence.

9. Levines' 4/17/97 Petition, including Exhibits 1, 2, and 3, regarding request to videotape the Levines' personal property held by Defendant March at his Chicago residence;

10. Levines' 6/19/97 Motion for Sanctions regarding the deposition of Defendant March;

11. 7/21/97 Order regarding delivery to Levines of Levines' personal property taken by Defendant March to Chicago;

12. Defendant March's 8/20/97 Notice of Appeal regarding delivery of personal property to the Levines;

13. Levines' 9/23/97 response brief, including exhibits, regarding Defendant March's refusal to comply with Court Order regarding return of personal property to the Levines;

14. Levines' 12/8/97 Memorandum Brief filed in support of Motion for Sanctions and Contempt including Exhibits 1 through 16, regarding Defendant March's refusal to return Levines' personal property and comply with Court Order;

15. Levines' 1/27/98 reply brief regarding sanctions and contempt of Court by Defendant March, specifically Defendant's misconduct during a deposition;

16. Levines' 11/17/98 Petition for Contempt regarding Defendant March's failure to comply with Court's order and return Levines' personal property;

17. Levines' 11/17/98 Request for Fees and Expenses, including Exhibit 4, for Defendant March's failure to comply with the Court's Order dated July 15, 1998;

18.    1/20/99 Order regarding Defendant March's contempt for refusal to obey Court Orders;

19.    1/20/99 Order concerning dismissal of Defendant March's appeal;

20.    Levines' 2/3/99 Motion to Dismiss Defendant March's Appeal;

21.    3/24/99 Order of the Court of Appeals regarding dismissal of Defendant March's Notice of Appeal regarding contempt orders;

22.    Levines' 7/2/99 Petition, including exhibits and supporting memorandum brief, for Defendant March's willful and deliberate refusal to comply with Court Orders;

. . . .

30.    Pages 22-36 of the transcript from the January 5, 1999 hearing regarding Defendant March's failure to return to a handbag and a quilt and repair furniture as ordered by the Court;

31.    Pages 35-39 and pages 42-48 from transcript from the August 15, 1997 hearing regarding Defendant March's failure to comply with Court Order on three separate occasions;

32.    Cover page and pages 27-38 of transcript from September 24, 1997 hearing regarding Defendant March's failure to obey Court's Orders;

33.    Statement dated October 7, 1999 regarding Perry March's failure to appear for a noticed deposition;

. . . .

1.    Defendant March's 11/25/96 Complaint for Appointment of Receiver;

2.    12/18/96 Order of Transfer to Probate Court by Chancellor Lyle;

3.    11/25/96 Summons of Defendant March;

4.    Defendant March's 11/26/96 Motion to Transfer;

5.    Defendant March's 1/21/97 Motion to Dismiss, which includes statement by Defendant March that he is a party;

6.    Defendant March's 7/16/97 Objection to Fees;

7.    Defendant March's 8/20/97 Notice of Appeal;

8.    9/10/97 docketing statement for Court of Appeals, listing Defendant March as a party and appellant at Court of Appeals;

9.    9/16/97 Letter of Lionel Barrett designating record for Defendant March's appeal;

10.    Defendant March's 10/7/97 Notice of Appeal;

11.    Defendant March's 8/14/98 Notice of Appeal;

12.    10/4/99 Order of Magistrate Griffin regarding Defendant March's request to remove case to Federal Court; and

13.    Order filed March 20, 1997 from Chancery Court 97-904II.

From everything disclosed by the record up until July 16, 1999, the Levines and Perry March were litigating an in rem proceeding concerning only the personal property of the Absentee, Janet Levine March, and the personal conduct of Perry March in the litigation.[2]

THE WRONGFUL DEATH ACTION

On July 16, 1999, the Levines sought to amend their original Intervening Petition of November 6, 1996 in order to assert a wrongful death action against Perry March, acting in "their individual capacities as next friends of Janet March and as next friends of Samson and Tzipora March." In this Amended Intervening Petition and Cross-Claim they asserted:

5.    On August 15, 1996, Perry March intentionally inflicted severe, physical harm on Janet March and thereby proximately caused her death. The Cross-Claimants bring this action against Perry March for the wrongful death of Janet March.

6.    Janet March and Perry March were married in June 1987 in Nashville, Tennessee. Samson March, their first child, was born August 27, 1990. Their second child, Tzipora March, was born May 17, 1994. At the time of the acts relevant to this action, Janet March and Perry March lived with their children at 3 Blackberry Road in Nashville, Tennessee.

7.    The first few years of the marriage of Janet March and Perry March were without marital problems. However, beginning in 1990, Janet March and Perry March began having problems with their relationship. Over time, Perry March became physically, verbally, and emotionally abusive toward Janet March. At Janet March's insistence, Perry March underwent several years of psychiatric treatment. The relationship continued to deteriorate, and by 1996, Janet March and Perry March argued frequently and Janet March was contemplating divorce. In early August 1996, the relationship had deteriorated so sharply that Perry March stayed in hotel rooms, rather than at his wife's house, from August 7 until August 13, 1996.

8.    Perry March returned to the house occupied by Janet March and his children on August 13, 1996. Despite his return home, the marital problems between Janet March and Perry March continued. On the night of August 15, 1996, Janet March and Perry March had a heated argument. Perry March inflicted serious bodily injury on Janet March during that argument. As a proximate result of Perry March's violent and wrongful act, Janet March died on August 15, 1996 or very shortly thereafter.

9.    After he killed Janet March, Perry March began taking steps to hide her body and destroy evidence of his wrongful act. At about midnight on August 15, 1996, Perry March telephoned the Cross-Claimants and told them that he and Janet

---

[2] Separate from the personal property, the real estate owned by Janet March was also the subject of the litigation, but such is not material to the case at bar, it having been disposed of in conformity with the opinion of this Court in *March v. Levine*, 1999 WL 140760.

March had had an argument and that she had left the house. During a series of telephone calls between the Cross-Claimants and Perry March over the next twenty-four hours, Perry March fabricated other details of his story. He eventually told the Cross-Claimants that Janet March had said she was taking a twelve-day vacation and had given him a typed list of things to accomplish while she was gone. Still later, Perry March told the Cross-Claimants that Janet March had taken her passport, $1,500.00 cash, and three bags filled with clothes and personal items with her when she left.

10. On August 15, 1996, several hours before he called the Cross-Claimants to claim that Janet March had left, Perry March called his brother, Ron March, in Illinois and his sister, Kathy March, in Michigan. Within days of August 15, 1996, and at different times, Ron March, Kathy March, and Perry March's father, Arthur March, who resided in Mexico, came to Nashville.

11. On or about August 23, 1996, Perry March began searching for a criminal defense attorney. On August 29, 1996, at the insistence of the Cross-Claimants, the Metro Police were notified that Janet March was missing. On September 7, 1996, Janet March's car was found at an apartment complex in Nashville. Inside the car were personal items belonging to Janet March. Janet March's body has never been found.

12. On or about September 16, 1996, Metro Police asked Perry March to consent to a search of the personal computer on which Janet March had supposedly typed the list of things for Perry March to do while she was on vacation. Perry March refused to allow the search. Metro Police obtained a search warrant for the residence and notified Perry March's criminal defense attorney that they would execute the warrant the following day, September 17, 1996. When they searched the house, Metro Police found that the computer's hard drive had been forcefully removed from the computer. It has never been recovered, and Perry March has not offered an explanation for its disappearance.

13. On September 17, 1996, Metro Police publicly declared Perry March as the prime and only suspect in the homicide investigation of Janet March.

14. Since that date, Perry March has consistently refused to cooperate with the investigation into the death of Janet March. He has refused to answer questions about her death; he has refused to cooperate with the Metro Police in their investigation into the death; and he has hindered the investigation by, among other acts, hiding the body of Janet March, destroying or hiding evidence of her death, and by destroying or hiding the hard drive of the personal computer used by Janet March.

15. Because Perry March killed Janet March, Samson March and Tzipora March will be deprived for their lives of the love, affection, attention, devotion, and guidance of their mother. Because Perry March killed Janet March, the Cross-Claimants will be deprived for their lives of the love, affection, attention, devotion, and guidance of their daughter.

On July 26, 1999, Perry March filed his Special Appearance and Response to Motion Filed on Intervening Wrongful Death Action. In this pleading, he challenges the introduction of an entirely new cause of action into an existing in rem action by use of Rule 15.01 of the Tennessee Rules of Civil Procedure. Also, on July 26, 1999, the conservator for the absentee of Janet Levine March filed a petition, essentially, to be relieved from participation in the wrongful death action, asserting in part:

> 4.     On November 6, 1996, Lawrence and Carolyn Levine filed with this Court an "Intervening Petition" setting forth that they were acting as "next friends and parents of Janet Gail Levine March and grandparents of Samson March and Tzipora March."
>
> 5.     Since that date, the Levines have participated fully in this action, including pursuing an appeal from this Court's Order of May 1997 approving a settlement agreement with Perry March. However, the Levines have never filed a Motion for leave to intervene in this matter or obtained leave of Court to intervene, as is required by the express provisions of Rule 24, Tennessee Rules of Civil Procedure.
>
> 6.     The Levines have now sought leave to amend their Intervening Petition to assert a tort claim of wrongful death against Perry March. Allowance of this amendment will not only radically alter the nature of this proceeding but will further deplete the assets of this estate if the Conservator and his counsel are required to participate in this additional litigation. It is respectfully submitted that the potentially significant financial burden to this estate of permitting the Levines to commence what is effectively a new cause of action is a relevant consideration for the Court in determining whether "justice requires" that this amendment be allowed in accordance with the requirements of Rule 15, Tennessee Rules of Civil Procedure.

The proposed Amended Intervening Petition and the objections thereto came on to be heard by the trial court on July 30, 1999. At the conclusion of the hearing, the trial court observed:

> I think Mr. Gideon also had the right to file a Rule 15 motion to amend the previous matter, and so I believe it is properly before the Court to file it on that matter. Rule 15 clearly says that leave shall be freely given, and there's an appellant opinion that says we don't have to construe it. It means what is says. That's one of the very few times I've read a Court of Appeals opinion that says, "We don't have to explain it. Just read it." And so it says that.
>
> Therefore - - and - - and any deficiencies in the amended petition are not to be challenged at the Rule 15 hearing. They are to be challenged after the Rule 15 is granted. About the only time I would have the right to say no on a Rule 15 is if it's the day of the trial and there's prejudice or if the party just clearly had no standing and there's just absolutely no way to do it.
>
> But I feel I'm compelled to grant that. I feel that I should grant it, so I'm granting the motion and petition of Lawrence and Carolyn Levine to amend their petition to intervene and to bring what we refer to as a wrongful death action.

Now, having granted that, then Mr. Barrett, on behalf of Mr. March or any other party, would have the right to file a motion to dismiss, a motion for a more specific statement, a motion to remove Lawrence or Carolyn Levine as next kin because someone else has a superior right or they have a conflict of interest or what have you. But those matters actually occur on the second phase, the second hearing. That's the way that Rule is written, and that's the way I have followed it for almost 20 years in this business.

So, Mr. Gideon, your motion to intervene and to proceed with a wrongful death action is granted.

On August 10, 1999, the trial court entered an Order allowing the Amended Intervening Petition and Cross-Claim holding:

The Motion for Leave to Amend the Intervening Petition heretofore filed is well taken and is granted. Pursuant to Tenn. R. Civ. P. 15.01, the Petitioner shall have fifteen days from July 30, 1999, the date of the hearing of this matter, in which to answer the cross-claim. The Court finds that the Intervening Petitioners, Lawrence Levine and Carolyn Levine, are appropriate intervening parties and are properly before this Court.

The Court also finds that the Intervening Petitioners, Lawrence Levine and Carolyn Levine, have standing to bring the wrongful death action as next friends of Janet Levine March and as next friends of Samson March and Tzipora March. The Court also finds that it has jurisdiction to preside over all issues that have heretofore been properly brought before it in this matter, including the allegations in the cross-claim for wrongful death brought by the Intervening Petitioners, Lawrence Levine and Carolyn Levine.

The motion of the Conservator to be excluded from participation in discovery and other matters related to the wrongful death action is granted.

We hold that the trial court erred in allowing the amendment.

It is apparent that the trial court took literally the observation of the Supreme Court in *Branch v. Warren*, 527 S.W.2d 89, 92 (Tenn. 1975) wherein it is stated: "Indeed, the statute (section 20-1505, T.C.A.) which conferred a measure of discretion on trial judges was repealed and Rule 15 stands in its place and stead. That rule needs no construction; it means precisely what it says, that 'leave shall be freely given.' "

Taken literally and in isolation, this general statement would destroy any discretion in the trial court about allowing or disallowing amendments under Rule 15.01. Since Federal Rule of Civil Procedure 15(a) and Tennessee Rule of Civil Procedure 15.01 are identical, decisions under Federal Rule 15(a) may be considered in construing Tennessee Rule 15.01. *Gamble v. Hospital Corp. of Am.*, 676 S.W.2d 340 (Tenn. Ct. App. 1984).

The granting or denying of a motion to amend is within the sound discretion of the trial court and will be reversed only for an abuse of discretion. *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 91 S.Ct. 795, 28 L.Ed.2d 77 (1971); *Merriman v. Smith*, 599 S.W.2d 548 (Tenn. Ct. App. 1979).

In *Merriman v. Smith*, this Court observed:

> *Hageman v. Signal L.P. Gas, Inc.*, 486 F.2d 479 (6th Cir. 1973), although it discusses the Federal Rules of Civil Procedure, Rule 15, sets out some of the broad and legitimate factors a trial judge should weigh in considering a Motion to Amend: Undue delay in filing; lack of notice to the opposing party; bad faith by the moving party, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party, and futility of amendment.

*Merriman*, 599 S.W.2d at 559.[3]

In this case:

1.      The entire proceeding in the probate court from October 30, 1996 to July 16, 1999 was a purely in rem proceeding under the absentee estates statutes that dealt solely with the personal and real property of Janet Levine March.

2.      The thirty-one month delay between the filing of the original Intervening Petition by the Levines on November 6, 1996 and the filing of the Amended Intervening Petition and Cross Complaint for Wrongful Death on July 16, 1999 is unexplained in the record.

3.      There is no assertion by the Levines of any newly discovered evidence of wrongful death discovered subsequent to the November 6, 1996 Intervening Petition.

4.      All of the facts alleged in the July 16, 1999 Amended Intervening Petition and Cross-Claim for wrongful death were known to the Levines at the time of the filing of the November 6, 1996 Intervening Petition.

UNDUE DELAY

While delay alone is an insufficient basis for denying leave to amend, *Moore v. City of Paducah*, 790 F.2d 557, 562 (6th Cir. 1986), unexplained delay coupled with other factors may constitute "undue delay" within the meaning of the Rule as construed in *Foman v. Davis, Merriman v. Smith* and other cases. One such factor is where the party seeking to amend has known all of the facts underlying the amendment since the beginning of the litigation. "[L]ate amendments to assert new theories are not reviewed favorably when the facts and the theory have been known to the party seeking amendment since the inception of the cause of action." *Acri v. International Ass'n. of Machinist and Aerospace Workers*, 781 F.2d 1393, 1398 (9th Cir. 1986). *See also Royal Ins. Co. of*

---

[3]      These are the same factors established by the United States Supreme Court in *Foman v. Davis*, 371 U.S. 178, 83 S.Ct. 229, 9 L.Ed.2d 222 (1962).

*Am. v. Southwest Marine*, 194 F.3d 1009, 1016-17 (9th Cir. 1999); *Duggins v. Steak 'n Shake, Inc.* 195 F.3d 828, 834 (6th Cir. 1999).

In upholding the denial by the trial court of leave to amend, the Tenth Circuit Court of Appeals observed in *McKnight v. Kimberly Clark Corp.*, 149 F.3d 1125 (10th Cir. 1998):

> The motion was filed a full year after the date of the initial pleading. Many key individuals would have had to be deposed again if the complaint was amended. Further, it appears that plaintiff was aware of all the information on which his proposed amended complaint was based prior to filing the original complaint. Plaintiff offered no explanation for the undue delay.
>
> We will not disturb a district court's decision to deny a motion to amend if the opposing party will be unduly prejudiced by the amendment. *Federal Insurance Co. v. Gates Learjet Corp.*, 823 F.2d 383, 387 (10th Cir. 1987). In this case, prejudice would clearly result. While we recognize that Fed.R.Civ.P. 15(a) requires that "leave shall be freely given," we have previously held that undue delay is sufficient to deny such leave. See *First City Bank v. Air Capitol Aircraft Sales, Inc.*, 820 F.2d 1127, 1133 (10th Cir. 1987).

*McKnight*, 149 F.3d at 1130.

Another factor relating to undue delay is prejudice to the opposing party. Reopening of discovery alone creates significant prejudice. *City of Paducah*, 790 F.2d 557. This factor is, of course, significantly discounted in this case because of repeated discovery evasion by Perry March, but it must be noted that no reason, justifiable or otherwise, appears from this record to explain why the Levines did not allege their wrongful death claim in their original Intervening Petition and thereby alleviate the necessity for reopening discovery thirty-one months later.

NEW CAUSE OF ACTION PROBLEM

A related and equally persuasive reason exists for denying leave to amend in this case. The "absentee" estate proceedings had been at issue for thirty-one months before the wrongful death amendment was sought. Much discovery and near-endless proceedings had already occurred in the trial court, all relating to the property of Janet March. The belated Amendment to the Intervening Petition and Cross-Claim against Perry March alleging wrongful death introduced an entirely separate proceeding into a statutory in rem case. In *King v. King*, 922 F.Supp. 700, 704 (D.N.H. 1996), the court addressed just such a problem holding, "the court finds that the addition of the proposed new claim would require discovery into matters that were not previously part of this action, and would likely further delay these already much delayed proceedings. The First Circuit has left no doubt that 'the further along a case is toward trial, the greater the threat of prejudice and delay when new claims are belatedly added.' *Executive Leasing Corporation v. Banco Popular de Porta Rico*, 48 F.3d 66, 71 (1st Cir.)" *See also Groth v. Orkin Exterminating Co., Inc.*, 909 F.Supp. 1143 (C.D. Ill. 1995);

*Burger v. Edgewater Steel Co.*, 911 F.2d 911 (3rd Cir. 1990); *Grant v. News Group Boston, Inc.*, 55 F.3d 1 (1st Cir. 1995).

The difficulty in another context is well stated by Appellees in their response in this Court to Appellant's Motion for Voluntary Dismissal of this appeal. Said Appellees on February 10, 2001:

I.     THE COURT AND ALL PARTIES INVOLVED RECOGNIZED FROM THE BEGINNING OF THE WRONGFUL DEATH CLAIM THAT IT WAS A SEPARATE AND DISTINCT CASE PROSECUTED APART FROM THE PROBATE CASE

On the same day the Trial Court granted the Appellees' request to amend their Probate Court petition and assert wrongful death claims, the Trial Court also ruled the wrongful death claims would constitute a separate cause of action. In doing so, the Trial Court separated the parties and the causes of action. In the probate case, the parties were: the Levines, the Conservator, and Perry March. In the wrongful death action, the parties were: the Levines and Samson and Tzipora March as Plaintiffs and Perry March as the Defendant. The children were not a party to the absentee estate case, and the Conservator was not a party to the wrongful death case. In the July 30, 1999 proceeding, the Court ruled:

MR. LEEMAN:     You do need to address our request that you instruct us not to be involved in the wrongful death matter.

THE COURT:     Correct. Thank you, Mr. Leeman. I did need to address that, and I was about to overlook it.

A wrongful death action is brought on the behalf of the surviving spouse or minor children. Even if there's a decedent's estate open, even if there's an executor or administrator of the estate, the executor and administrator don't have to be the plaintiff.

You don't have to open a decedent's estate to bring that action. It, under statute, is the right of the surviving spouse and/or minor children. The point being here that even though we have a Conservator, even if we had an executor, they would not have to be a party to that action. They would have a right to say we want to be the party, but they would not have to be.

So for that reason, Mr. Leeman is correct that the Conservator does not have to be a party to the wrongful death action. And based upon their express desires that, to save the conservatorship money, they would like to be excluded from

-20-

that, so they don't have an affirmative duty to participate or monitor, I agree.

And so the Conservator shall not be obligated and shall have no duty to participate in a wrongful death action, whether it be brought by the Levines against Perry March, whether it be brought by Arthur March against Lawrence Levine or anybody else. . . .

Clearly, the Trial Court ruled that, with the addition and subtraction of parties in the two, different lawsuits, the wrongful death action became a distinct cause of action. The wrongful death action was prosecuted entirely separately from the probate proceedings, and the Conservator did not participate in any way in the wrongful death case.

Accordingly, there was never more than one claim for relief present in any action pending before the Trial Court. There was, and remains, a probate proceeding involving the conservatorship of Janet Levine's estate. There was also, as a completely separate cause of action, a wrongful death action unrelated to the conservatorship, except that the cases shared the same decedent.

Moreover, the Trial Court assigned a separate docket number to the wrongful death action and directed the clerk to maintain the file as a separate case. The Trial Court's Order of October 20, 2000 clearly addresses the wrongful death action as being "distinguished from the Absentee Conservatorship and Receivership."

The wrongful death claims were prosecuted from the beginning as separate from and unrelated to the probate case involving the conservatorship of Janet Levine's estate. They were not the same action as contemplated by Tenn. R. Civ. P. 54.02. Accordingly, the continuing pendency of the conservatorship does not affect the finality of the wrongful death judgment.

COMPULSORY JOINDER OF THE CONSERVATOR PROBLEM

Far from relieving the practical problems in this case and conserving judicial resources, the course of action taken has had the opposite effect. With apologies to Senator Carmack, the pewter handle has been welded to the wooden spoon. Without the conservator being a party to the wrongful death action, he is not bound by the finding of death, wrongful or otherwise. Under Tennessee Code Annotated section 30-3-102(1984) the issue of death "shall go to the court or jury as one of fact to be determined upon evidence."[4]

_____

[4] The specific language that the issue of death "shall go to the court or jury as one of fact to be determined upon evidence" contained in Tennessee Code Annotated section 30-3-102 (1984) was deleted by Chapter 121 of the Public Acts of 2001effective April 26, 2001. The overall effect, however, of Tennessee Code Annotated section 30-3-102, as amended by Chapter 121 of the Public Acts of 2001, and the provisions of Tennessee Code Annotated section 30-3-108 (2001), as amended by the same Act, still require a factual hearing on the question of death

(continued...)

Tennessee Code Annotated section 30-3-108(2001), relative to the final hearing on the absentee estate provides, in part:

> (a)     At any time during the proceedings, upon application to the court and presentation of satisfactory evidence of the absentee's death, the court may make a final finding and decree that the absentee is dead, in which event the decree and a transcript of all the receivership proceedings shall be certified to the probate court for any administration required by law upon the estate of a decedent, and the receivership court shall proceed no further except for the purposes hereinafter set forth in § 30-3-110, subdivisions (1) and (3).

The finding of death by the trial court in the wrongful death action cannot be *res judicata* as to the absentee estate or its conservator, as the conservator is not a party to the action. It is inconceivable that a default judgment against Perry March, based on no evidence, would work collateral estoppel on the conservator, or any third party dealing with the conservator, and thereby provide a substitute for evidence of death required by Tennessee Code Annotated sections 30-3-102 and 30-3-108. *See State ex rel. Cihlar v. Crawford*, 39 S.W.3d 172 (Tenn. Ct. App. 2000).

We are left with the strange paradox that Janet March is alive (or at least not established by evidence to be otherwise) for the purpose of the absentee estate but deceased for the purpose of the wrongful death action against Perry March.

Appellant March asserts on appeal that the conservator of the absentee estate is an indispensable party to the wrongful death action. Appellant points out that a party who will be directly affected by a decree and whose interest is not represented by any other party to the litigation is an indispensable or necessary party. It is difficult, however, to say that the conservator will be directly affected by the wrongful death decree. The conservator simply continues as before until he is relieved by a finding of death under the absentee estate statute, by evidence of death, or by unexplained absence for seven years under Tennessee Code Annotated section 30-3-102(a)(2001).[5] By Chapter 121 of the Public Acts of 2001, the legislature may have resolved the problem *in futuro* but not now.

---

[4](...continued)
which hearing must take into consideration the presumption of death resulting from unexplained absence for seven years.

[5]  Prior to Chapter 121 of the Public Acts of 2001, effective April 26, 2001, section 30-3-102 specifically provided that there was no presumption of death to be drawn by seven years of unexplained absence. By section 1(a) of this Act, the common law presumption of death from seven years unexplained absence was reinstated. The presumption is rebuttable, but unrebutted, will support a final decree dissolving the conservatorship estate per section 30-3-108(c), as that Code section was amended by section 3(c) of the 2001 Act. By the terms of section 6 thereof, chapter 121 of the Public Acts of 2001 is applicable to any person whose death has not previously been adjudicated under Title 30 Chapter 3 part 1 regardless of the date of disappearance or absence.

THE DEFAULT JUDGMENT

The Amendment to the Intervening Petition and Cross-Claim alleging wrongful death was allowed by the trial court after a hearing on July 30, 1999. On February 8, 2000, the trial court granted judgment by default against Perry March for the wrongful death of Janet Levine March holding: "This court has held on two occasions that Perry March is a willfully disobedient party and has willfully disobeyed unambiguous, specific orders of this Court. The Court finds that Perry March continues to be a willfully disobedient party." The Order then, as a sanction under Tennessee Rule of Civil Procedure 37.02(c), struck the Answer of Perry March to the Amended Intervening Petition and Cross-Claim and granted a judgment against Perry March as to liability for the wrongful death of Janet Levine March in the same language as was contained in the Amended Intervening Petition and Cross-Claim.

In this action, we hold that the trial court was in error. Judgment by default for failure to obey an order to provide discovery is an extreme sanction. *Shahrdar v. Global Hous., Inc.*, 983 S.W.2d 230, 236 (Tenn. Ct. App. 1998). The Levines sought, in vain, after the trial court allowed the wrongful death amendment, to compel Perry March to return to Nashville to give his discovery deposition. The trial court ordered him to return to Nashville. He countered with a proposal for a telephonic deposition or to submit to a deposition in the community of his residence in Mexico. He also asserted an unconvincing argument that he lacked the financial resources to return to Nashville.

When one reviews the behavior of Perry March from November of 1996 up to the date of the filing of the wrongful death claim in July of 1999, almost any sanction would have been justified. However, it is the conduct of March following the conversion of this case to a wrongful death action that must be judged, rather than his previous conduct. Default judgments in general should be set aside if reasonable doubt exists as to the conduct of the defaulting party. *Tennessee State Bank v. Lay*, 609 S.W.2d 525 (Tenn. Ct. App. 1980); *Nelson v. Simpson*, 826 S.W.2d 483 (Tenn. Ct. App. 1991). This rule must be balanced against the rule that the trial judge may be reversed on the imposition of sanctions only by an affirmative showing of an abuse of discretion. *Brooks v. United Unif. Co.*, 682 S.W.2d 913 (Tenn. 1984).

Following the default judgment, the trial court, on April 4, 2000, denied Appellant's application to set the judgment aside. The court impaneled a jury to determine damages and approved the jury's verdict of $113,500,000.00 in damages against Perry March for the wrongful death of Janet Levine March.

Considering the conduct of Mr. March subsequent to the filing of the wrongful death action, the imposition of a default judgment is simply too drastic a sanction for his behavior. Throughout this entire proceeding, Perry March has not been the only transgressor. The Levines, in their zeal to sustain their position and to punish Perry March for what they sincerely believe to be the murder of their daughter, have contributed greatly to the problems in this case. This Court recognizes the patience and fortitude of the learned trial judge in trying his best to control this litigation, preserve

the absentee estate, and maintain the integrity of his court in the face of nearly insurmountable challenges.

CONCLUSION

The judgment of the trial court allowing the amendment under Rule 15.01 of Tennessee Rules of Civil Procedure to assert a wrongful death action is reversed. The default judgment for wrongful death and the ensuing award of damages against Perry March is reversed.

Appellant seeks a reversal and dismissal as an adjudication upon the merits of the wrongful death action. He cannot have both a holding that the amendment was erroneously allowed and the default judgment erroneously entered and, at the same time, claim the benefit of an adjudication upon the merits. If the amendment under Rule 15.01 was erroneous, there has been no adjudication upon the merits. Whether the purported wrongful death action is premature, timely, or barred by the Statute of Limitations must await adjudication on another date.

The judgment of the trial court is reversed, and the case is remanded with directions to dismiss the wrongful death action and proceed with the absentee estate in rem action. Costs of the cause are assessed to Appellees.

_____
WILLIAM B. CAIN, JUDGE