IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
June 21, 2011 Session

# BOBBY MURRAY, ET AL. v. DENNIS MIRACLE, ET AL.

**Appeal from the Chancery Court for Roane County**
**No. 16543      Frank V. Williams, III, Chancellor**

_____

**No. E2010-02425-COA-R3-CV-FILED-SEPTEMBER 8, 2011**

_____

The plaintiffs, Bobby Murray and Loretta Murray ("the Murrays"), asserted a complaint against the defendants, Dennis Miracle and Robert Daniel Smith, for denying them access to a road and interfering with their use and enjoyment of their property. After several hearings, the trial court concluded that the Murrays were not following the court's orders and dismissed their claims against both Mr. Miracle and Mr. Smith without prejudice. The Murrays appeal. We reverse.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court
Reversed; Case Remanded**

JOHN W. MCCLARTY, J., delivered the opinion of the Court, in which HERSCHEL P. FRANKS, P.J., and CHARLES D. SUSANO, JR., J., joined.

Bobby Murray and Loretta Murray, Harriman, Tennessee, for the appellants, pro se.

Mark N. Foster, Rockwood, Tennessee, for the appellees, Dennis Miracle and Robert Daniel Smith.

**OPINION**

**I.  BACKGROUND**

The Murrays relate the facts of their lawsuit as follows:

Plaintiffs own two Pieces of Real property Located at Blair Rd. Harriman, TN, 37748. that the two propert[ies] are not joined together, nor are They Joined to the Property owned By Defendant Dennis Miracle. That one Property Has

A Road to it, which is the Road that Mr. Miracle, is accused of tearing up. It is also the Property where many of the incidents occurred. The one property has no Road. It is to this Property that Defendant Robert Daniel Smith refuses to allow Plaintiffs to Build a Road[.] He Effectively Has Landlocked Our Property.

The Murrays further assert that Mr. Miracle assaulted them by shooting a rifle and/or shotgun as they stood upon their own property because he was angry that the Murrays had purchased the land. According to the Murrays, Mr. Miracle destroyed their road with a tractor and obstructs their access to the property with his vehicle. The Murrays allege that Mr. Smith gave his written permission for them to "provide roadway improvement measures for the purpose of beneficially improving suitable access to various lots over and around existing roadways . . . ." However, after the Murrays proceeded to procure the materials to fix the roadway, Mr. Smith rescinded his written permission, informing them that he had incurred expenses to correct damage they had caused.

After a hearing in November 2009, the trial court ruled as follows:

*With respect to the Motion to Dismiss for Plaintiffs' Failure to Provide Cost Bond, Plaintiffs indicated at the hearing that they had a cost bond and would be filing that cost bond immediately. The Court finds that the filing of the cost bond would render moot the motion, and accordingly orders Plaintiffs to immediately file a cost bond.*

With respect to Defendant Dennis Miracle's Motion for Summary Judgment, *the Court finds that Plaintiffs failed to timely file their required response to Defendant Dennis Miracle's Statement of Material Facts pursuant to Rule 56.03. Instead, Plaintiffs filed, at 1:01 p.m. on the day of the hearing, a one-page response and Affidavits of the plaintiffs, neither of which responded to the facts set forth in the original Rule 56.03 statement.*

The Court finds that it has both the discretion to excuse Plaintiffs' failure to comply with Rule 56.03 and the concomitant discretion to deny Plaintiffs' request to be permitted to supplement the record on the day of the hearing. Exercising this discretion, *the court ORDERS that Plaintiffs shall file a response to Defendant Dennis Miracle's Statement of Material Facts by Monday, November 16, 2009*, in which event the Court will consider the evidentiary material submitted by Plaintiffs on November 13, 2009 without prejudice to Defendant re-asserting his Motion for Summary Judgment as to some or all claims if Plaintiffs' response to the Statement of Material Facts

demonstrates that not all facts are genuinely disputed by Plaintiffs.

> If Plaintiffs do not file a response to Defendant Dennis Miracle's Statement of Material Facts by Monday, November 16, 2009, the Court will not consider any facts submitted by Plaintiffs, will treat the facts in the Statement of Material Facts as undisputed, and will grant Defendant Dennis Miracle summary judgment and dismiss the Complaint for the reasons stated in the Motion for Summary Judgment and for failure to comply with this Court's order.

(Emphasis added). From the sparse record before us, we discern that counsel for the Murrays finally responded to Mr. Miracle's Statement of Material Facts on January 21, 2010.

Another hearing was held in July 2010, this time on Mr. Miracle's motion to dismiss pursuant to Rule 37.04 due to the Murrays "Complete Refusal to Answer Discovery, or, In the Alternative, for Order to Compel Plaintiff[s] to Respond to Defendant's Discovery Requests." The following order issued on September 22, 2010:

> ***Counsel for Plaintiff[s] acknowledged that no response had been provided to the discovery requests, but ensured the Court that responses would be forthcoming promptly.***

> The Court denied the portion of the Motion seeking the dismissal of Plaintiffs' claim. However, pursuant to Rule 37.01(2), the Court finds that it is appropriate to grant Defendant's motion for an Order compelling Plaintiff[s] provide responses to [Defendant's] discovery requests. It is accordingly hereby ORDERED that Plaintiff[s]'s shall provide complete discovery responses to Defendant's discovery requests within ten days.

> ***The Court further finds pursuant to Rule 37.01(4) that it is appropriate to award Defendant his reasonable expenses incurred in obtaining this order, including attorney's fees.*** Therefore, based on the Affidavit of Defendant's counsel as to fees incurred with respect to the Motion, ***the Court hereby ORDERS Plaintiff[s] to pay to counsel for Defendant within ten days $438.82 for Defendant's reasonable expenses, including attorney's fees, incurred in obtaining this Order.***

(Emphasis added). Subsequent to this order, the Murrays filed the following "motion" to notify the trial court that they had discharged their attorney and were proceeding pro se:

Come the plaintiffs Bobby and Loretta Murray, as pro se plaintiffs, to notify the Court of a Change in representation, Plaintiffs will represent them in this, and to explain why. As the Court is aware the plaintiffs Attorney was Ms Donice Butler, Esq. who has been hired and Fully Paid for her services. Has failed to, as the Order of 9,28,10 explains, (Due to {Plaintiffs Complete Refusal to answer Discovery, or, In the alternative, For order to compel Plaintiffs to Respond to Defendants Discovery requests. Counsel for Plaintiffs acknowledged that no Response had been provided to the discovery.) Fulfill Her duties as to the Court and to Plaintiffs, as to the discovery in this case. . . . She did not respond, over several months. Ms. Butler had ample Opportunity to fulfill Her obligations to the Court and did not. . . . She Failed to respond, and Did not even Know on July 16, 2010 that there was a hearing until Plaintiff[s] Bobby and Loretta Murray stopped Her in the Hallway of the Courthouse and told Her, which Caused Her to appear before Court without as much as a paper in Her hand. Were Plaintiffs not Aware of that Court date the case would have been dismissed then. And She gave the Court a lame excuse that Plaintiff Loretta Murray had been sick, and had missed (quote) a couple Appointments.) This statement was not, and is not true Plaintiffs have never missed an appointment with her. We have [scheduled] at least seven or eight appointments with her to discuss Discovery with Her, and were turned around at Her door by Her staff. Although we have Discussed the case minutely in the Hall of the Courthouse we have not had an appointment with Her since the day We Hired Her. Since Plaintiffs did hire Her, and did pay Her it is Her Responsibility to handle this case for us. At this She has failed miserably. This has resulted in the Court Ordering Plaintiffs to pay Defendants Counsel $438.82. Since Ms Butler has been hired, And paid in full to handle this case. Plaintiffs would argue that it is fully the responsibility of Counsel to handle any and all things, including Discovery, that arise in this case, or any other That an Attorney has been retained to Handle. Plaintiffs believe that it was the duty of Counsel to Comply with discovery and those Plaintiffs personally had no responsibility to fulfill any thing in This case. Plaintiffs would argue that since It was the responsibility of Counsel to comply with discovery, e[s]p[e]c[i]ally since She has possession Of all documents involved in this case. Since Plaintiffs had no say in what was filed, or not filed in this case, ***Plaintiffs ask this Court to reconsider the order for Plaintiffs to pay the $438.82*** and Order Counsel Donice Butler to Pay since the responsibility for the mistakes falls on Her since She was attorney of record. The Plaintiffs Bobby and Loretta Murray should not Be punished for the obvious mistakes that a first year Law student could have avoided. Plaintiffs are not financially able to pay this cost. Plaintiffs pray the Court reconsider its

-4-

Order. Plaintiffs also would make the Court aware that at This stage we are unable to Hire Further Counsel at this time, and will, as our rights allow, Represent ourselves from this point, In this case. Since we have had the misfortune to Hire inadequate Counsel. We will represent ourselves until such time as we are able to obtain suitable Counsel. We will proceed with Discovery as soon as we are able to obtain our files from Ms Butler.

(Emphasis added). The Murrays then filed an answer to Mr. Miracle's motion to dismiss:

> . . . Plaintiffs would Agree that They were Ordered On September 22, 2010 to pay Attorneys fees to Counsel for Dennis Miracle, specifically. $438.82 this order was made By the Court, Plaintiffs believe to punish Counsel. as The record will show was the one that was not prepared to proceed with Her case did not Comply with Discovery. Plaintiffs were ordered to pay for something that they had no control Over at the time. **Plaintiffs believe they are right to ask this Court to reconsider its order.** And to Order the one who made the mistake to pay if anyone, Plaintiffs have made no such Mistake as Yet. We believe that to punish us in such a way would place a Hardship upon Us.
>
> **Plaintiffs have made no attempt to pay this order as the subject is still before the Court for its Consideration at this time. . . .** And would Put Plaintiffs In the dubious Position of having to pay Defendants Attorney, Which is Blatantly Unfair, Especially since none of this Plaintiffs fault. . . . The Court will please not that Plaintiffs have only filed one Brief before this and thus cannot Have been guilty of (continued failures) of any kind since Former Counsel Filed all briefs before That, and The Mistakes were not ours, But Hers.
>
> **As to the issue of The Court Order Saying that Plaintiffs should file a Cost Bond, that was Unnecessary since Plaintiffs Have Already paid all Court Costs. . . .**

(Emphasis added).

The Murrays also filed the following "answer" to Mr. Smith's motion to dismiss:

> . . . The original suit states a claim against Mr. Smith, that Mr. Smith denied Plaintiffs access To our Property. First Mr. Smith wrote Plaintiffs a letter granting us permission to Improve the road that was already there. This letter dated Mar, 9, 2009. then followed By a Letter denying access. . . . Further the Defendant has Conspired with Defendant Dennis Miracle to stop Plaintiffs

from coming onto There Property by allowing Him to Harass and threaten and intimidate. By Shooting at Plaintiffs, Drawing Guns On Plaintiffs threatening Plaintiffs Verbally, By chasing Plaintiffs, By blocking the public road with His vehicle, and His person, denying Plaintiffs Access, By cursing at Plaintiffs upon their approach to said Property. And other Intimidating action. When plaintiffs attempted to gain access to our property. By Reporting this harassment to Robert Daniel Smith He told Plaintiffs that Dennis Miracle Was the road Supervisor and that He alone could build or improve any road. Plaintiffs had and did speak to Mr. Smith about building a road to access our property Shortly before receiving the letter dated Mar 9, 2009. What Plaintiffs believe the Court is Not understanding is that there is a road to one piece of property, but we own another Piece that has no road or access to it except by walking. Mr. Smith owns the right of way To all property owned by everyone in Woodcutters Paradise, and has Sold all of the Property included in this, including the property Owned by Mr. Miracle. He has allowed Mr. Miracle access to His Property and Has denied Us access to ours By writing Us a Letter saying we cannot build our own Road, nor will He build one. We are effectively Landlocked . . . . Although there is a Easement on Our deed that calls for a Thirty-foot Right of way, Mr. Smith Not only Refuses to allow Plaintiffs to build a road to Our Property, But effectively Employees A, Guard/Bully/Road Supervisor to intimidate any one who attempts to gain access to Their Property. And allowed Him to post no trespassing signs at the access roads and Even on our property. According to Daniel Smith We Must not only have His Permission To access Our property, But also gain permission from Dennis Miracle, Who will and has Chased away us, as well as anyone else who comes near the access road. Mr. Miracle has Pulled a gun on the Murrays several times and shot at us at least once. . . . As He told The Plaintiffs (This is My G-- D---- Mountain, and I don't want anybody back Here) this while standing on our Property. Thumping Himself on the chest like a Gorilla. Mr. Smith has at least one time recovered this property and sold it again as a result of the Lack of access to the property. And has made a monetary gain because of the lack of a Road, and or the deliberate harassment by Dennis Miracle of anyone who try's to gain Access to any property within the confines of Woodcutters Paradise. In plain English Dennis Miracle Harasses property owners until they realize they cannot use the property And then Daniel Smith steps in, Buys and resells the property for a profit. . . . Plaintiffs would also submit that they have owned these two Pieces of property since September 2007 and have been denied access to it since then Because of the Harassment of Defendant Dennis Miracle with the steadfast support of Daniel Smith. That we have paid taxes and improved the property at our own

-6-

expense And cannot set foot on it for fear of getting shot. . . .

After a hearing on November 4, 2010, the trial court ruled as follows:

The Court finds that Plaintiffs were ordered by the Court's Order entered September 22, 2010 to pay attorney's fees to counsel for Defendant Dennis Miracle, and specifically, $438.82, but have failed to do so, arguing that their former counsel should have to pay instead, and that Plaintiffs were ordered by this Court's Order entered November 23, 2009 to file a Cost Bond "immediately," but have likewise failed and refused to do so, arguing that a cost bond is unnecessary. The Court finds that Plaintiff[s] have engaged in a pattern of failing and refusing to comply with their obligations under the Rules of Civil Procedure and this Court's Orders both before and after Plaintiffs discharged their former counsel, and accordingly, the Court dismisses the complaint against Defendant Dennis Miracle pursuant to Rules 37.02(C) and 41.02(1). Dennis Miracle is hereby granted a judgment against Plaintiffs Bobby Murray and Loretta Murray, jointly and severally, for $438.82, for which execution may issue.

The Court further finds that the Complaint in this matter fails to state a claim against Defendant Robert Daniel Smith upon which relief may be granted. Accordingly, the Complaint against Defendant Robert Daniel Smith is dismissed pursuant to Tennessee Rule of Civil Procedure 12.02(6).

In the exercise of the Court's discretion, the Court rules that the dismissals provided in this Order are without prejudice.

The Murrays filed a timely appeal.

## II. ISSUES

We restate the issues presented on appeal as follows:

A. Whether the trial court erred in granting the motions to dismiss.

B. Whether the trial court erred in ordering the Murrays to pay Mr. Miracle's attorney fees as sanctions for their failure to comply with discovery.

C. Whether the trial court erred in determining the reasonableness and amount of the attorney fees to be awarded to Mr. Miracle as Tenn. R. Civ. P. 37.01(4) sanctions.

D. Whether the Murrays' appeal is frivolous such that this court should remand to the trial court to assess against the Murrays pursuant to Tenn. Code Ann. § 27-1-122 the costs, including attorney fees, reasonably incurred by Mr. Miracle and Mr. Smith in this appeal.

## III. STANDARD OF REVIEW

This court reviews a trial court's choice and imposition of discovery sanctions under an abuse of discretion standard. *Alexander v. Jackson Radiology Assocs.*, 156 S.W.3d 11, 14 (Tenn. Ct. App. 2004). "An abuse of discretion occurs where the trial court has applied an incorrect legal standard or where its decision is illogical or unreasoned and causes an injustice to the complaining party." *Mercer v. Vanderbilt Univ., Inc.*, 134 S.W.3d 121, 131 (Tenn. 2004). We are not permitted to substitute our judgment for that of the trial court. *Caldwell v. Hill*, 250 S.W.3d 865, 869 (Tenn. Ct. App. 2007). We will reverse a trial court's decision to impose sanctions only if the court "has acted unreasonably, arbitrarily, or unconscionably." *Hodges v. Tenn. Att'y Gen.*, 43 S.W.3d 918, 921 (Tenn. Ct. App. 2000).

In considering a motion to dismiss pursuant to Tenn. R. Civ. P. 12.02(6), courts should construe the complaint liberally in favor of the plaintiff, taking all allegations of fact as true, and deny the motion unless it appears that the plaintiff can prove no set of facts in support of the claim that would entitled plaintiff to relief. *Cook v. Spinnaker's of Rivergate, Inc.*, 878 S.W.2d 934, 938 (Tenn. 1994). All allegations in the plaintiff's complaint are taken as true; we review the conclusions of the trial court de novo with no presumption of correctness. Tenn. R. App. P. 13(d); *Owens v. Truckstops of Am.*, 915 S.W.2d 420, 424 (Tenn. 1996).

## IV. DISCUSSION

### A.

The Murrays are representing themselves on appeal and represented themselves during a portion of the proceedings below. While persons who chose to represent themselves are entitled to the fair and equal treatment of the courts, *Hodges*, 43 S.W.3d at 920 (citing *Paehler v. Union Planters Nat'l Bank, Inc.*, 971 S.W.2d 393, 396 (Tenn. Ct. App. 1997)), "[p]ro se litigants are not . . . entitled to shift the burden of litigating their case to the courts."

*Whitaker v. Whirlpool Corp.*, 32 S.W.3d 222, 227 (Tenn. Ct. App. 2000) (citing *Dozier v. Ford Motor Co.*, 702 F.2d 1189, 1194-95 (D.C. Cir. 1983)). The courts should take into account that many pro se litigants have no legal training and little familiarity with the judicial system, but also must be mindful of the boundary between fairness to a pro se litigant and unfairness to the pro se litigant's adversary. *Hessmer v. Hessmer*, 138 S.W.3d 901, 903 (Tenn. Ct. App. 2003). Accordingly, pro se litigants must comply with the same substantive and procedural law to which represented parties must adhere. *Hodges*, 43 S.W.3d at 920-21. However, the courts give pro se litigants who lack formal legal training a certain amount of leeway in drafting their pleadings and briefs. We measure the papers prepared by pro se litigants using standards that are less stringent than those applied to papers prepared by lawyers. The courts should give effect to the substance, rather than the form or terminology, of a pro se litigant's papers. *See Alex Lyon & Son Sales Managers & Auctioneers, Inc. v. Boles*, No. M2010-00388-COA-R3-CV, 2010 WL 3895520, at *2 (Tenn. Ct. App. Oct. 5, 2010).

According to the trial court's order, it dismissed the Murrays' complaint against Mr. Miracle pursuant to Rules 37.02(C) (failure to comply with a discovery order) and 41.02(1) (failure to comply with any order) of the Tennessee Rules of Civil Procedure, without prejudice, because the Murrays refused to obey the trial court's Rule 37.01(4) order directing them to pay attorney fees and an earlier order directing them to file a cost bond.

Trial courts have broad authority in discovery matters, including the scope of discovery, *Benton v. Snyder*, 825 S.W.2d 409, 416 (Tenn. 1992), the time permitted for discovery, *Payne v. Ramsey*, 591 S.W.2d 434, 436 (Tenn. 1979), and the imposition of sanctions for abuse of discovery, *Brooks v. Uniform Co.*, 682 S.W.2d 913, 915 (Tenn. 1984). The authority to impose sanctions for abuse of the discovery process derives from the rules and the court's inherent powers. *Lyle v. Exxon Corp.*, 746 S.W.2d 694, 698-99 (Tenn. 1988).

A dismissal for failure to comply with a discovery order is an extreme sanction, but the trial court's decision will not be disturbed by this court in the absence of an affirmative showing that the trial court abused its discretion. *Alexander*, 156 S.W.3d at 14; *Holt v. Webster,* 638 S.W.2d 391, 394 (Tenn. Ct. App. 1982). Likewise, a trial court's decision to dismiss under Rule 41.02(1) is reviewed only for abuse of discretion. *Hodges*, 43 S.W.3d at 921.

The power to dismiss a party's claims is best exercised infrequently and only when the punishment fits the offense. *Pegues v. Ill. Cent. R.R. Co.*, 288 S.W.3d 350, 354 (Tenn. Ct. App. 2008). Dismissal is normally appropriate only where there has been a "clear record of delay or contumacious conduct." *See Shahrdar v. Global Housing, Inc.*, 938 S.W.2d 230, 236 (Tenn. Ct. App. 1998).

Trial courts should exercise restraint when dismissing a party's claims because "[t]he interests of justice are best served when lawsuits are resolved on their merits after trial." *Orten v. Orten*, 185 S.W.3d 825, 836 (Tenn. Ct. App. 2005) (Lee, J., dissenting) (citing *Akers v. Bonifasi*, 629 F.Supp. 1212 (M.D. Tenn. 1984)).

After the Murrays discharged their attorney following the trial court's order for them to pay attorney fees, they submitted an inartfully drawn pleading days later that stated as follows: "Plaintiffs ask this Court to reconsider the order for Plaintiffs to pay the $4[38].82 and Order Counsel Donice Butler to Pay . . . ." This pleading was filed before the trial court dismissed the Murrays' case. Counsel for Mr. Miracle asserts that the Murrays never presented any motion for the trial court to change its order from the July 16, 2010 hearing, and, in any event, the order from the July hearing, filed on September 22, 2010, remained a valid order that must be obeyed until it was modified.

A lawyer's conduct during the course of litigation is attributable to and binding on his or her client. *Hart v. First Nat'l Bank*, 690 S.W.2d 536, 539 (Tenn. Ct. App. 1985). However, Tennessee courts generally do not favor dismissal when attorney error causes a client's failure to abide by discovery rules. *See Murray v. Christian Methodist Episcopal Church*, 153 S.W.3d 371, 378 (Tenn. Ct. App. 2004). Moreover, as noted above, the courts give pro se litigants who lack formal legal training a certain amount of leeway in drafting their pleadings and measure the adequacy of the pleadings using standards that are less stringent than those applied to papers prepared by lawyers. The substance of the October 4, 2010, pleading was sufficient to apprise the trial court that the Murrays were requesting that it reconsider the attorney fee award and the issue of whether the fee sanction should have been imposed on counsel instead of the Murrays. Tenn. R. Civ. P. 37.01(4) and Tenn. R. Civ. P. 37.02 permit imposing monetary sanctions for discovery abuse against a party, the party's lawyer, or both. We find therefore that the trial court abused its discretion in dismissing the Murrays' claims pursuant to Rule 37.02(C) without addressing the Murrays' reconsideration request.

As to the cost bond issue, it has long been the law that persons who commence a civil action in our courts are required to file a cost bond, Tenn. Code Ann. § 20-12-120,[1] and pay an initial filing fee. Indigent persons who file an appropriate affidavit stating they are entitled to relief but are unable to bear the expense of litigation because of their poverty, Tenn. Code Ann. § 20-12-127, may be excused from the requirement of filing a cost bond.

---

[1]Tenn. Code Ann. § 20-12-120 states: "No leading process shall issue from any court without security being given by the party at whose instance the action is brought, for the successful prosecution of the party's action, and, in case of failure, for the payment of court costs and taxes which may be awarded against the party, unless in cases and instances specially excepted."

The failure to either provide a cost bond under Tenn. Code Ann. § 20-12-120 or submit for consideration a pauper's oath under Tenn. Code Ann. § 20-12-127 provides ample basis for dismissal. *See Henderson v. Dept. of Safety*, No. M1999-01911-COA-R3-CV, 2000 WL 1862838, at *2 (Tenn. Ct. App. Dec. 21, 2000). The Murrays completed an affidavit of indigency and the trial court found them to be indigent on November 16, 2010 – the same day the court entered the order dismissing the case.

As part of their appeal to this court, the Murrays filed a document entitled "Appeal of Court Order." In that document, they argued as to the cost bond that they

> had paid the entire Court Cost of $363.50 when the Cause was filed, and paid the Cost in Full at the filing of the Action, Which rendered the Courts Order [moot] because the Cost Had Been Paid. One cannot Both file a Cost Bond and Pay Court Cost. One Must Chose One or the Other. When one files a cost Bond one is required to Pay $87.00 and file a cost Bond or Just Pay the court cost Of $363.50 which Plaintiffs did, one can not do both.

The actions and statements of the Murrays reflect serious misunderstandings of the judicial process. It is clear to us that after they fired their attorney, they were overwhelmed by the complexity of the situation in which they found themselves and the rules required to navigate the judicial system. Most significantly, the Murrays have not filed any statement of the evidence setting forth what they contend occurred in the trial court.[2] Thus, they have failed to provide this court with a record upon which we can conduct judicial review of the events that occurred in the hearings. We have no evidence in the record before us that they

---

[2]Tenn. R. App. P. 24(c) provides:

(c) **Statement of the Evidence When No Report, Recital, or Transcript Is Available.** If no stenographic report, substantially verbatim recital or transcript of the evidence or proceedings is available, the appellant shall prepare a statement of the evidence or proceedings from the best available means, including the appellant's recollection. The statement should convey a fair, accurate and complete account of what transpired with respect to those issues that are the bases of appeal. The statement, certified by the appellant or the appellant's counsel as an accurate account of the proceedings, shall be filed with the clerk of the trial court within 60 days after filing the notice of appeal. Upon filing the statement, the appellant shall simultaneously serve notice of the filing on the appellee, accompanied by a short and plain declaration of the issues the appellant intends to present on appeal. Proof of service shall be filed with the clerk of the trial court with the filing of the statement. If the appellee has objections to the statement as filed, the appellee shall file objections thereto with the clerk of the trial court within fifteen days after service of the declaration and notice of the filing of the statement. Any differences regarding the statement shall be settled as set forth in subdivision (e) of this rule.

raised the above argument to the trial court. Usually, in cases where no transcript or statement of the evidence is filed, we are required to presume that the record, had it been properly preserved, would have supported the action of the trial court. *Reinhardt v. Neal*, 241 S.W.3d 472, 477 (Tenn. Ct. App. 2007). However, despite the limited record before us, we conclude that the trial court erred in dismissing the Murrays' claims when on the same day it dismissed the case, it found the Murrays indigent and excused them from the requirement of filing the cost bond. This action by the trial court caused the issue of the cost bond to become moot. Under the circumstances, we find the trial court abused its discretion by entering an order of dismissal due to the lack of a cost bond.

**B.**

The trial court granted Mr. Smith's motion to dismiss pursuant to Tenn. R. Civ. P. 12.02(6), finding that "the Complaint in this matter fails to state a claim against Defendant Robert Daniel Smith upon which relief may be granted."

In *Highwoods Properties, Inc. v. City of Memphis*, 297 S.W.3d 695 (Tenn. 2009), the Tennessee Supreme Court noted that

> [a] Rule 12.02(6) motion under the Tennessee Rules of Civil Procedure seeks to determine whether the pleadings state a claim upon which relief may be granted. ***Such a motion tests only the legal sufficiency of the complaint, not the strength of the proof.*** The resolution of the motion is determined by an examination of the pleadings alone.

*Id.* at 700 (citations omitted) (emphasis added). Thus, the lack of a transcript or statement of the evidence does not prevent our consideration of this issue.

For the purposes of such a motion, the moving party admits the truth of all the relevant and material factual allegations in the complaint but asserts that no cause of action arises from those facts. *Winchester v. Little*, 996 S.W.2d 818, 821-22 (Tenn. Ct. App. 1998). A complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his/her claim that would entitle him/her to relief. *Willis v. Dept. of Corrections*, 113 S.W.3d 706, 710 (Tenn. 2003).

Under Rule 12.02(6), dismissal is warranted only when the alleged facts will not entitle the plaintiff to relief or when the complaint is totally lacking in clarity and specificity. *Dobbs v. Guenther,* 846 S.W.2d 270, 273 (Tenn. Ct. App. 1992). Thus, a court reviewing a complaint being tested by a Rule 12.02(6) motion must construe the complaint liberally in

favor of the plaintiff by taking all factual allegations in the complaint as true, and by giving the plaintiff the benefit of all inferences that can reasonably be drawn from the pleaded facts. *Stein v. Davidson Hotel*, 945 S.W.2d 714, 716 (Tenn. 1997). Such motions are not favored, and are rarely granted in light of the liberal pleading standards in the Tennessee Rules of Civil Procedure. *Dobbs*, 846 S.W.2d at 273.

On appeal from an order granting a Rule 12.02(6) motion, this court must, like the trial court, presume that the factual allegations in the complaint are true, and we must review the trial court's legal conclusions regarding the adequacy of the complaint without a presumption of correctness. *Willis*, 113 S.W.3d at 710.

The Murrays allege in their complaint that Mr. Smith entered into an agreement with them allowing the building of a road, but then revoked the agreement, thereby denying the Murrays access to their property. Based upon the factual allegations, we cannot find that the Murrays can prove no set of facts that would entitle them to relief. Their complaint against Mr. Smith should not be dismissed under Rule 12.02(6).


## V. CONCLUSION

The orders of dismissal are reversed. Because we find in favor of the Murrays, the argument that this is a frivolous appeal is rejected. The costs of this appeal shall be taxed to the appellees, Dennis Miracle and Robert Daniel Smith. The cause is remanded to the trial court for all necessary proceedings.


_____
JOHN W. McCLARTY, JUDGE