**Tommy MURRAY**

v.

**CHRISTIAN METHODIST EPISCOPAL CHURCH.**

Court of Appeals of Tennessee, Western Section, at Jackson.

Nov. 17, 2003 Session.

March 23, 2004.

Permission to Appeal Denied by Supreme Court Oct. 4, 2004.

372

Nathan B. Pride, Jackson, Tennessee, for the appellant, Christian Methodist Episcopal Church.

J. Mark Benfield, Memphis, Tennessee, for the appellee, Tommy Murray.

## OPINION

HOLLY M. KIRBY, J., delivered the opinion of the court, in which W. FRANK CRAWFORD, P.J., W.S., and ALAN E. HIGHERS, J., joined.

This case involves the breach of a construction contract. The plaintiff performed construction work on three apartment complexes, but was not paid in full for his services. He sued the defendant church, which allegedly owned the apartments, seeking the rest of the money due for his work. The church moved to dismiss, asserting it had no ownership interest in the apartment complexes. Discovery disputes arose. The trial court granted a default judgment in favor of the plaintiff, finding that the church failed to cooperate in the discovery process. The trial court denied the church's motion to set aside the default judgment. The church now appeals. We reverse, finding that under the circumstances of this case, the trial court abused its discretion in refusing to set aside the default judgment against the church.

In the summer of 1999, Plaintiff/Appellee Thomas "Tommy" Murray ("Murray") entered into a contract with Taliafaro, Inc. ("Taliafaro"), a real estate management company, to perform construction work on three apartment units, the Oaks Apartments, the Eastwood Park Apartments, and the Andrew Jackson Apartments ("the properties").[1] The properties were owned by Jackson Avenue Properties, Inc. ("Jackson Avenue"), and Christ Methodist Episcopal–Eastwood, Inc. ("Christ Methodist Episcopal–Eastwood"), Tennessee nonprofit corporations. Taliafaro was retained by the owners to manage and operate the properties. Before the construction work was completed, Taliafaro was replaced by Millennium Management Company ("Millennium"), which assumed management duties for the properties.

On May 17, 2000, Murray sued Taliafaro and Millennium for breach of contract, unjust enrichment, unfair or deceptive practices, and promissory fraud for failure to pay the full amount of the contract price for the construction work. In addition, Murray sued Defendant/Appellant Christian Methodist Episcopal Church ("CME Church" or "the Church"), under the same legal theories for failure to pay fully for Murray's construction work. The complaint alleged that CME Church owned the apartment units in question, and that Taliafaro, on behalf of CME Church, entered into one or more agreements with Murray to make repairs, renovate, and improve the apartments. With the complaint, Murray filed his first set of interrogatories and requests for production of documents, propounded to all of the defendants, including CME Church. Taliafaro and Millennium were served with process in June 2000. CME Church claimed that it had no interest in the properties, and resisted accepting service of process. Eventually, on September 21, 2000, CME Church was served with service of process through the Secretary of State. The Secretary of State verified to the trial court clerk that the original complaint was mailed to CME Church on September 28, 2000.[2]

---

1. At the time, Murray was operating through his company, M & M Janitorial & Maintenance Service

2. According to the trial court, CME Church would not accept service of process for several months. The Church finally accepted service, but only after the Secretary of State threatened to dissolve its corporate charter if it did not do so.

On November 7, 2000, Murray filed a motion for default judgment against all of the defendants, including CME Church, alleging that "the Answers of all Defendants are overdue." On November 16, 2000, the defendants filed a joint answer. In the joint answer, CME Church alleged, as an affirmative defense, that Murray failed to join indispensable parties, because the true owners of the properties were Jackson Avenue and Christ Methodist Episcopal–Eastwood.

On November 21, 2000, Murray filed a motion to compel against all of the defendants because none had responded to the discovery requests that were served with the complaint. In the motion to compel, Murray requested that the trial court enter a default judgment against the defendants as a sanction for their failure to respond to discovery.

On December 14, 2000, the defendants filed their discovery responses. CME Church's responses to the interrogatories indicated that no individuals employed by CME Church had knowledge of the subject matter of the litigation, nor was any employee of the Church aware of the circumstances surrounding the work done by Murray. Consequently, many of the interrogatories were answered "N/A," indicating that the question was not applicable, given the Church's position that no one in the organization had knowledge of the situation.[3] Likewise, the Church's responses to Murray's document requests indicated that the Church did not have possession of, nor any control over, documents connected to the work performed by Murray. The documents requested that the Church did have in its possession, such as tax returns,

were not produced on the basis that the requests were broad and vague, or that the production of those documents placed an onerous burden on the Church. Thus, CME Church produced no documents in response to Murray's requests.

Contemporaneous with its discovery responses, CME Church filed a motion to dismiss the complaint, again asserting that it was not a proper party to the lawsuit because it held no interest in the properties at issue. The Church averred that "[t]he CME Church has been sued in error, as it has no legal interest." In support of its motion, the Church attached documents identifying the corporate owners of the properties, Jackson Avenue and Christ Methodist Episcopal–Eastwood.

On December 19, 2000, the trial court entered an order on Murray's motion to compel discovery as well as his motion for a default judgment and sanctions. The trial court expressed dissatisfaction with the defendants' course of conduct in the proceedings, stating that "the Defendants failed to file an Answer in a timely manner and further failed to answer discovery in a timely manner, and this Court finds no legal justification or factual basis that could possibly serve as an excuse for the conduct of these Defendants." Despite its disapproval of the defendant's conduct, the trial court denied both motions, including the motion to compel, noting, among other things, that the defendants had difficulty obtaining counsel until after the deadlines for filing an answer had passed.

On February 16, 2001, the trial court held a hearing on CME Church's motion to dismiss. The record contains no transcript of the hearing. On February 28, 2001, the

---

**3.** For example, interrogatory number 4 asked for the identification and information about possible expert witnesses. Interrogatory number 5 asked for the identification of every individual who had inspected and approved Murray's work. Because the Church stated that no one in the organization was aware of the facts surrounding Murray's work, any questions about those facts would not apply to the Church.

trial court denied CME Church's motion to dismiss, based on the "arguments of counsel and the entire record in this cause."

On August 29, 2001, Murray filed a motion to compel discovery and for sanctions against CME Church and Millennium.[4] In his motion, Murray alleged that the Church "intentionally avoided service of process for several months," and that both defendants "continued to avoid this litigation by failing to answer the complaint for several months." Murray's motion further stated that his November 2000 motion to compel was necessitated by the defendants' refusal "to respond to discovery requests for several months." Murray indicated that the Church's discovery responses were inadequate because many of the interrogatories were answered "N/A," and because none of the requested documents were produced. Murray noted that, in Taliafaro's discovery responses, Taliafaro had indicated that it provided CME Church with all reports related to the operations of the properties. Murray asserted that, if Taliafaro gave the Church reports related to the operations of the properties at issue, then its discovery responses denying any interest in the properties must have been false or evasive and not in compliance with applicable discovery rules. *See* Tenn. R. Civ. P. 26, 33, 37. Therefore, Murray asked the trial court to require CME Church to respond "appropriately" to its first set of discovery requests. In addition, Murray sought severe monetary sanctions against the Church for its abuse of the discovery process. Murray also requested that the trial court order CME Church to produce its attorney, Charles Carpenter, for a deposition. On September 4, 2001, a few days after he filed his motion to compel, Murray propounded his second set of interrog-

atories and requests for production upon all of the defendants, including CME Church.

On September 11, 2001, a hearing was held on Murray's motion to compel discovery. CME Church did not appear at the hearing. The record on appeal includes no transcript of that proceeding. On September 14, 2001, the trial court entered an order requiring CME Church to "answer all of Plaintiff's outstanding discovery on or before Friday, September 28, 2001," including both the first and second set of discovery requests propounded by Murray. Murray's motion for sanctions was deferred pending the final outcome of the litigation. On September 25, 2001, before the September 28 discovery deadline, the trial court held a status conference in open court. The appellate record contains no transcript of that proceeding. At the September 25 status conference, the trial court granted Murray's motion to compel and for sanctions and set for hearing the amount of sanctions to be imposed on the defendants. In addition, the trial court permitted CME Church's defense counsel, Charles Carpenter, to withdraw as counsel for the Church, effective *nunc pro tunc* to August 18, 2001. In light of the withdrawal of its counsel, the trial court granted CME Church a five-day extension in which to file its responses to Murray's discovery requests. Neither CME Church nor Millennium filed any further discovery responses. Taliafaro, however, responded to the discovery requests, pursuant to the trial court's order.

On October 5, 2001, CME Church filed a motion to rehear the February 28, 2001 denial of its motion to dismiss and for a protective order. The Church claimed, among other things, that the order did not clearly show the reasons for the denial of

---

**4.** Murray actually filed two separate motions against these defendants, but for purposes of discussion, they will be treated as one motion to compel and for sanctions.

the motion, and again asserted that the Church was not a proper party in the case. The motion to rehear stated that "to require your Defendant to disclose any further information to the Plaintiff would be futile since your Defendant is not a proper party to this action."

On October 10, 2001, the trial court held a hearing on the sanctions to be awarded for the discovery abuses of CME Church and Millennium. The appellate record includes no transcript of that proceeding. On October, 15, 2001, the trial court entered an order granting Murray a default judgment as sanctions for the defendants' discovery abuses. The trial court concluded that the first discovery responses of CME Church and Millennium, filed in December 2000, were "inadequate, incomplete, evasive, and amounted to a complete failure to respond." At the time of the hearing, neither the Church nor Millennium had filed any responses to Murray's second set of discovery requests. The trial court found that CME Church and Millennium had "engaged in a clear pattern of discovery abuse, stonewalling, and delay throughout this litigation." Consequently, the trial court granted Murray a default judgment against the Church and Millennium, and awarded Murray $20,000 in sanctions for the defendants' failure to comply with discovery requests. A hearing on damages was set for October 30, 2001.

On October 19, 2001, CME Church filed a motion for relief from the trial court's October 15, 2001 order. The Church noted that it had obtained new counsel, Gerald Green, to replace Carpenter only fifteen days before the trial court's October 15 order was entered. The Church maintained, under the circumstances, that the sanction of a default judgment plus a $20,000 penalty was too harsh. On October 23, 2001, Murray issued a subpoena

*ducus tecum* on CME Church and Millennium, requesting those defendants to produce a variety of documents at the October 30, 2001 hearing on damages. On October 29, 2001, the Church filed an amended motion for relief from sanctions.

On October 30, 2001, the trial court held a hearing on damages to be awarded to Murray. At that hearing, Murray voluntarily nonsuited his claim against Taliafaro. On November 8, 2001, the trial court entered an order against CME Church and Millennium, awarding Murray $40,591.47 in compensatory damages, prejudgment interest, and $10,000 in punitive damages. The trial court noted that the defendants did not intend to comply with the subpoenas issued on October 23, and that such willful failure to comply "evidences the ongoing continuous defiance of the Court's orders, and the law. Defendants'. flagrant efforts to conceal documents is an obvious and outrageous insult to this Court and the entire judicial system." In awarding punitive damages, the trial court found it significant that the defendants' steadfast refusal to provide discovery prevented Murray from exploring other circumstances bearing on the appropriate amount of the punitive damage award.

On November 16, 2001, Murray filed a motion to amend the judgment, arguing that the damages awarded were insufficient and amounted to a loss to him. Murray argued that, once attorney's fees and litigation costs were paid, he would receive less than he would have received had the defendants not defrauded him. On January 10, 2002, the trial court granted Murray's motion and increased the punitive award to $25,000. From that order, CME Church filed this appeal.[5]

---

5. Millennium did not appeal the trial court's     decision.

On April 17, 2002, CME Church filed a motion in the trial court to set aside the default judgment, asserting once again that the Church was not a proper party and that the trial court had made a mistake of fact.[6] Subsequently, the Church filed with this Court a motion to remand the cause to the trial court so that the trial court would have jurisdiction to consider its motion. On May 13, 2002, this Court remanded the case to the trial court to consider CME Church's Rule 60.02 motion to set aside.

On remand, the trial court denied the Church's motion to set aside the default judgment, and reiterated its original finding that the Church had failed to comply with the discovery rules. The Church failed to inform this Court of the trial court's decision. Murray then filed a motion with this Court to dismiss the Church's appeal, which was denied. On November 6, 2002, the Church's attorney filed a motion requesting permission to withdraw, which motion was granted by order dated November 13, 2002.[7] Subsequently, this Court gave the church's new counsel until April 1, 2003 to file an appellate brief.

On appeal, CME Church argues that the trial court erred in denying its motion to dismiss, in granting the default judgment against it, and in refusing to set aside the default judgment. The Church asserts that record in this case does not support the grant of a default judgment, in that there is no record of clear delay and contumacious conduct. In the alternative, the Church argues that, if it is determined that entry of the default judgment was appropriate, then the weight of the evidence preponderates against the trial court's award of punitive damages.

■ The trial court's decision is reviewed *de novo* on the record, with a presumption that its findings of fact are correct, unless the evidence preponderates otherwise. *Ganzevoort v. Russell*, 949 S.W.2d 293, 296 (Tenn.1997); Tenn. R.App. P. 13(d). The trial court's conclusions of law are reviewed *de novo*, with no such presumption of correctness. *Ganzevoort*, 949 S.W.2d at 296. When a trial court renders a default judgment against a defendant as a sanction for discovery abuses, we will reverse that decision only if the trial court has abused its discretion. *Brooks v. United Uniform Co.*, 682 S.W.2d 913, 915 (Tenn.1984); *Shahrdar v. Global Hous., Inc.*, 983 S.W.2d 230, 236 (Tenn.Ct. App.1998).

■ We first address whether the trial court erred in failing to set aside the default judgment. The propriety of a trial court's denial of a request to set aside a default judgment depends in part on whether the default judgment was properly entered in the first place. *Yearwood, Johnson, Stanton & Crabtree, Inc. v. Foxland Dev. Venture*, 828 S.W.2d 412, 413 (Tenn.Ct.App.1991). One requirement for getting a default judgment set aside is that the defendant must show that he or she had a meritorious defense. *Id.* at 414.

■ Under Rules 37.04 and 37.02(C) of the Tennessee Rules of Civil Procedure, the trial court is expressly authorized to render a judgment by default against a party for failure to abide by discovery rules. *Holt v. Webster*, 638 S.W.2d 391,

---

**6.** This motion was filed by the church's new counsel, Michelle L. Berserai, who was substituted as counsel for the church by order dated March 14, 2002. Gerald Green was given permission to withdraw as counsel of record by this Court in an order dated May 14, 2002.

**7.** CME Church's current counsel, Nathan B. Pride, was allowed to be substituted as counsel for the Church by order of this Court dated February 14, 2003.

394 (Tenn.Ct.App.1982). Rule 37.04 states that, if a party fails to serve answers or objections to interrogatories, the trial court may enter such orders as are just, and may take any action authorized in Rule 37.02(C). *See* Tenn. R. Civ. P. 37.04. Rule 37.02(C) provides that the trial court may, among other things, enter an order "rendering a judgment by default against the disobedient party." Tenn. R. Civ. P. 37.02(C). "Dismissal is a harsh sanction." *Holt*, 638 S.W.2d at 394. "Although this sanction is extreme, it is appropriate 'where there has been a clear record of delay or contumacious conduct.'" *Shahrdar*, 983 S.W.2d at 236 (quoting *In re Beckman*, 78 B.R. 516, 518 (M.D.Tenn. 1987)). The purpose of such a rule is to punish those who disobey discovery orders, and to deter those who might disregard such orders in future cases. *Holt*, 638 S.W.2d at 394. However, "lesser sanctions are generally favored where the neglect and defalcations are more attributable to the attorney than to his client."[8] *Mills v. Bank of Roane County*, 1991 WL 126553, at *2 (Tenn.Ct.App. July 15, 1991).

■ Under caselaw, it is clear that the issue of whether the grant of a default judgment was justified under the "clear record of delay or contumacious conduct" standard is determined on a case by case basis. In *Shahrdar*, for example, a former hotel manager sued the hotel corporation and others, claiming breach of an oral contract, negligent misrepresentation, promissory fraud, and intentional or negligent infliction of emotional distress. The plaintiff alleged that the hotel recruited him to move to Tennessee from Nevada, and then, after he had moved to Tennessee and managed one of the defendant's hotel properties for five months, the hotel refused to pay him according to the parties' oral agreement and even denied that he ever was a hotel employee. *Shahrdar*, 983 S.W.2d at 233. From the time the complaint was filed, the plaintiff repeatedly sought adequate responses to his discovery requests from the defendants. *Id.* Approximately eighteen months after the complaint was filed, the plaintiff moved for a default judgment, asserting that the defendants had failed to comply with discovery orders. The motion for default was granted by the trial court. Four months later, the hotel moved to have the trial court set aside the default judgment. The motion to set aside was denied by the trial court. A jury trial was then held on he issue of damages. *Id.* at 234.

On appeal, the *Shahrdar* court upheld the trial court's grant of a default judgment as a discovery sanction. The appellate court first noted that "the defendants' conduct in this case can be described as uncooperative at best." *Id.* at 236. The appellate court then recognized that the defendants either did not fully answer the interrogatories or requests for production or answered them with "boilerplate objections," despite the trial court's order to comply fully. Furthermore, the designated corporate representative for the defendants claimed to know nothing about the circumstances of the case, despite the fact that he was the president of the corporation. *Id.* The defendants argued that a default judgment was improper because the default judgment was entered shortly after its trial counsel withdrew from the case. The appellate court rejected that argument, noting that the corporate defen-

8. For an excellent comparison of the standards used by different states in determining whether a default judgment is appropriate as a discovery sanction, see John E. Theuman, Annotation, Judgment in Favor of Plaintiff in State court Action for Defendant's Failure to Obey Request or Order to Answer Interrogatories or Other Discovery Questions, 30 A.L.R.4th 9 (2004).

dant had in-house counsel at all pertinent times, and that the defendants had "ample opportunity to respond to the orders of the court." *Id.*

Numerous other cases have upheld the imposition of a default judgment as a discovery sanction. In *American Steinwinter Investor Group v. American Steinwinter, Inc.,* 964 S.W.2d 569 (Tenn.Ct.App. 1997), the appellate court held that a default judgment was justified when the defendant refused to obey discovery orders of the court without any excusable neglect. *See American Steinwinter,* 964 S.W.2d at 574. In that case, the appellate court stated that the defendant's flagrant disregard was clear from the record, and that "severe sanctions were in order." *Id.* In another case, entry of default judgment was upheld on appeal where the defendant had repeatedly refused to appear for a deposition and failed to appear at trial. The appellate court stated that the defendant's "actions were egregiously scornful of the judicial process." *Galde v. Keritsis,* No. 03A01–9807–CH–00228, 1999 WL 496630, at \*3–\*4 (Tenn.Ct.App. July 15, 1999). In yet another case, a default judgment was warranted when the defendant repeatedly failed to comply with discovery requests and committed perjury by lying in his answers to interrogatories. *Potts v. Mayforth,* 59 S.W.3d 167, 172 (Tenn.Ct.App. 2001).

In contrast, in *March v. Levine,* 115 S.W.3d 892 (Tenn.Ct.App.2003), the appellate court reversed the trial court's refusal to set aside a default judgment. In *March,* a husband was sued by his wife's parents for the wrongful death of the wife. The plaintiffs moved to compel the husband to travel to do so. The trial court granted the motion and ordered the husband to return to Nashville for his deposition. Despite that order, the husband refused to travel to Nashville to do so. He suggested to the trial court that he be permitted to participate in a telephonic deposition, or submit to a deposition near his home in Mexico. The husband asserted "unconvincingly" that he lacked the financial resources to go to Nashville for his deposition. *March,* 115 S.W.3d at 912–13. The trial court did not accept the husband's proposals, and his deposition was noticed to be taken in Nashville on an agreed upon date. *Id.* at 916 (Steward, J., dissenting). When the husband failed to appear, the deposition was noticed again on a date certain, and the trial court ordered the husband to inform the trial court whether he was willing to attend the deposition. The husband neither gave notice to the trial court, nor did he attend the deposition. Subsequently, the husband failed to appear at a hearing at which the trial court considered the plaintiffs' motion for sanctions. At that hearing, the trial court granted a default judgment against the husband for his disobedience of the court's discovery orders. *Id.* The trial court denied the husband's motion to set aside the default judgment.

The appellate court reversed the trial court's refusal to set aside the default judgment, holding that a default judgment in that situation was "simply too drastic a sanction for [the husband's] behavior." *Id.* at 912. The appellate court reasoned that, although the trial court had discretion to grant a default judgment as a sanction, the default judgment "should be set aside if reasonable doubt exists as to the conduct of the defaulting party." *Id.* at 913. The appellate court noted that the husband was not the only transgressor throughout the litigation, but that the plaintiffs contributed to some of the other problems in the case. Ultimately, the appellate court recognized the necessity that the trial court control the litigation and maintain the integrity of the court, but concluded that the

sanction of default judgment was not warranted under the circumstances. *Id.*

■ In determining whether a default judgment was justified as a sanction in the instant case, a brief review of CME Church's conduct is helpful. The Church was first served with the lawsuit and the first set of discovery materials on September 28, 2000. The Church filed its answer on November 16, 2000, after Murray's November 7 motion to compel and for sanctions. The Church's answer informed Murray that CME Church was not a proper party, and that the Church had no legal interest in the properties at issue. On December 14, 2000, CME Church, along with the other defendants, filed discovery responses. On the same day, the Church also filed a motion to dismiss, maintaining that it was not a proper party. The Church's motion to dismiss was later denied. On December 19, 2000, the trial court denied Murray's motion to compel and for a default judgment and sanctions, noting that the Church had been unable to answer in a timely manner because of its difficulty in obtaining counsel.

On August 29, 2001, over seven months after the initial discovery responses were filed, Murray filed a second motion to compel discovery and for sanctions. Shortly thereafter, on September 4, 2001, Murray propounded a second set of discovery requests. On September 14, 2001, the trial court granted Murray's motion to compel discovery. The September 14, 2001 order was the trial court's first order requiring CME Church to respond to discovery. Less than two weeks later, on September 25, 2001, before the discovery deadline had expired, the trial court granted Murray's motion for sanctions. In the same order, the trial court allowed the church's counsel

to withdraw *nunc pro tunc* to August 18, 2001,[9] and allowed the Church five more days in which to respond to discovery. Effectively, then, CME Church was not represented by counsel.

After hiring yet another attorney, the Church filed a motion for the trial court to rehear its motion to dismiss and for a protective order. Five days later, on October 10, 2001, the trial court held another hearing and granted Murray the default judgment as a sanction for the defendants' discovery abuses. The trial court found that the circumstances supported a finding that the defendants, including CME Church, had generally "engaged in a clear pattern of discovery abuse, stonewalling, and delay throughout this litigation."

This case presents a close question. Viewing the record as a whole, however, we must conclude that the conduct of CME Church did not rise to the level of contumacious behavior that would justify the entry of a default judgment as a sanction for the its failure to comply with discovery orders. In the trial court's December 19, 2000 order, the trial court expressed its dissatisfaction with the defendants' conduct. At the time that order was entered, however, CME Church was guilty of little discovery misconduct. It had answered the complaint, and it had filed its discovery responses a few weeks after its answer. At that time, there was no order compelling further discovery responses.

The adequacy of the Church's discovery responses was not raised again by either party until the filing of Murray's August 29, 2001 motion to compel. The only discovery order issued by the trial court in this case was entered on September 14,

---

9. The reason for this unusual order, permitting withdrawal *nunc pro tunc,* is not apparent in the record.

2001, at a time at which the Church effectively had no counsel and only two weeks remained before expiration of the court-imposed discovery deadline. This was a result of the *nunc pro tunc* order permitting withdrawal of the Church's counsel.

Murray argues that CME Church intentionally avoided service of process for several months, and that it continued to avoid litigation by failing to answer the complaint for several months. The record does not support this assertion and, moreover, it was unrelated to the Church's alleged failure to comply with the discovery requests. Once service was effected, the Church's answer was late not by "several months," as asserted by Murray, but only by a few weeks.

The trial court found that CME Church "engaged in a clear pattern of discovery abuse, stonewalling, and delay throughout this litigation." It is clear, however, that CME Church has maintained throughout the litigation that it was not the proper party to the lawsuit, and the Church's discovery responses have been consistent with this position. Under these circumstances, we must conclude that the conduct of CME Church does not rise to the level of contumacious conduct so as to justify default as a sanction. Consequently, we find that the trial court abused its discretion in granting Murray a default judgment as a discovery sanction against CME Church, and in failing to set aside that judgment. Thus, we reverse the trial court's failure to set aside the default judgment against CME Church, and remand for further proceedings consistent with this opinion.

The decision of the trial court is reversed as to CME Church, and the case is remanded for further proceedings consistent with this opinion. Costs are to be taxed to Appellee Tommy Murray, for which execution may issue, if necessary.