# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
May 14, 2025 Session

## ROBERT A. MARTIN, ET AL. v. ROBERT E. MARTIN, ET AL.

**Appeal from the Chancery Court for Cumberland County**
**No. 2019-CH-1587     Ronald Thurman, Chancellor**

_____

### No. E2024-00214-COA-R3-CV
_____

Robert A. Martin ("Father") and Donna Saas ("Daughter") (collectively "Plaintiffs") filed a petition in the Chancery Court for Cumberland County ("the Trial Court"), seeking the removal of Robert E. Martin ("Son") as trustee of the Martin Irrevocable Trust ("the Trust") and making claims of breach of fiduciary duty and conversion of assets against Son and his wife, Karen Martin ("Son's Wife") (collectively, with Son, "Defendants"). The Trial Court struck Defendants' defenses and denials in their answer given their failure to provide an accounting of the Trust's assets despite the Trial Court's orders to do so. After a hearing on damages, the Trial Court awarded Daughter half of the asset that was supposed to have been put in the Trust, half of the funds that Son had converted from Father's accounts, attorney's fees, punitive damages, and lost wages. Defendants appeal. Discerning no reversible error, we affirm.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed; Case Remanded

D. MICHAEL SWINEY, C.J., delivered the opinion of the court, in which JOHN W. MCCLARTY and KRISTI M. DAVIS, JJ., joined.

Matthew J. McClanahan, Crossville, Tennessee, for the appellants, Robert E. Martin and Karen Martin.

Charles W. Gilbreath, II, and Stephan R. Wright, Chattanooga, Tennessee, for the appellee, Donna Saas.

## OPINION

## Background

In April 2019, Plaintiffs filed a petition in the Trial Court to remove Son as the trustee of the Trust and for claims of conversion of assets and breach of fiduciary duty. Plaintiffs alleged that Son had misappropriated funds from Father and the Trust by converting those funds to his own uses in his role as trustee and Father's attorney-in-fact.

According to Plaintiffs, Father and his late wife, Elsie Martin ("Mother"), formed the Trust in May 2018, appointing Son as the trustee and identifying Son, Daughter, and Son's Wife as the beneficiaries. At the same time, Father executed a power of attorney ("POA") appointing Son as his attorney-in-fact. In February 2019, Father executed a new POA, revoking his previous one and appointing Daughter as his attorney-in-fact.

Plaintiffs alleged that Son had breached his fiduciary duty by failing to distribute the interest distributions to Daughter as required by the Trust and by failing to provide an accounting of the Trust's assets despite Daughter's request to do so in February 2019. Rather, Son allegedly made distributions of interest and principal to himself in the amount of $100,000.

With respect to Son's role as attorney-in-fact for Father, Plaintiffs alleged that he had misappropriated and converted $40,000 to $60,000 held in Father's savings account for his own personal use and benefit. Plaintiffs alleged that Son's Wife was also liable given that she either acted at the direction of, directed, or ratified Son's actions and received direct financial benefits from Son's actions.

Plaintiffs sought an accounting of the principal and interest of the Trust by Son; an award to Daughter of distributions of interest accrued on the principal; tracing of assets misappropriated by Son from the Trust and from Father pursuant to Son's authority as Father's attorney-in-fact; an award of damages against Defendants in favor of Plaintiffs; a restraining order prohibiting Defendants from contacting Father; an award of attorney's fees; removal of Son as trustee and replacement by Daughter; and taxation of the costs of the litigation to Defendants.

Approximately a week before Plaintiffs' lawsuit was filed, Defendants filed an *ex parte* petition for an emergency temporary restraining order ("TRO") and injunction against Daughter and the Cumberland County Bank in the Family and Probate Court for Cumberland County ("the Family Court"). Defendants alleged that Daughter had moved into Father and Mother's home; "had minimal responsibilities" for their care; was supported financially by Father and Mother; and had no independent financial means, no job, and no retirement. According to Defendants, Daughter had received two payments

of $55,000 and $175,000 from her parents and was using Father's credit card for her own personal needs. In contrast, Son stated that he was retired and financially solvent and had managed his parents' financial affairs without incident.

After Mother passed away, Daughter allegedly arranged her funeral in New York without informing Son and isolated Father from Son. Son was banned from Father's assisted living facility. A day before Mother's death, Son was informed that Father had executed a new POA replacing Son with Daughter as his attorney-in-fact. Son contacted Cumberland County Bank to inquire about one of Father's two accounts and discovered that Daughter had closed the account. Son maintained that Daughter had manipulated, coerced, and lied to Father to interfere with his relationship with Son for her own financial gain.

Defendants requested that the Family Court issue a TRO preventing Cumberland County Bank from allowing anyone to withdraw funds from Father's remaining account, a TRO preventing Daughter from entering into any transaction as Father's attorney-in-fact, an order directing the assisted living facility to rescind the ban on Defendants from visiting Father, and an order appointing a guardian *ad litem* ("GAL") for Father. The Family Court granted Defendants' petition for a TRO and appointed Father a GAL.

Plaintiffs filed a motion to vacate the TRO and dismiss the case. The Family Court entered an agreed order vacating the TRO. The case in the Family Court was transferred eventually to the Trial Court and consolidated with the present case.

After Plaintiffs filed a motion for default judgment in the Trial Court, Defendants filed an answer, alleging that Father did not have the capacity to execute the POA in favor of Daughter. They further alleged that the Trust provided for annual distributions, the Trust would not become a year old until May 2019, and no distribution was required to be made yet. Defendants admitted that Son had not yet provided an accounting, explaining that Daughter should have had access to the Trust given that she was now Father's attorney-in-fact. Defendants raised several affirmative defenses. Defendants asked the Trial Court to dismiss Plaintiffs' petition with prejudice for failure to state a claim, order that Son remain as trustee of the Trust, find that Son had not breached his fiduciary duty, and award Defendants reasonable attorney's fees and costs.

In December 2019, Son filed an accounting of the Trust in the Trial Court. His accounting provided the following information:

That Robert E. Martin would provide that the Trust holds assets of Robert A. Martin as follows:

a. Robert A. Martin     168,073.00

Interest from 3/13/2018 to 3/13/2019 was $4,257.08

b. Robert A. Martin     14,889.67

Interest from 3/13/2018 to 3/13/2019 was $347.97

That the Trust provides that Section 3.01 (a) Distribution of Income: *Our Trustee must distribute, at least annually, after deducting all expenses associated with the trust property, to and for the benefit of any one or more of the Lifetime Beneficiaries. An Interested Trustee may only make distributions for the beneficiary's health, education, maintenance, or support.*

That the Martin Irrevocable Trust was established May 31, 2018 and has not yet met the annual anniversary of the Trust, therefore the Trustee, Robert E. Martin has not made any distributions in accordance with the Trust provisions.

That the Martin Irrevocable Trust held an account for now deceased Elsie Martin [Father's late wife] in the amount of $21,827.00 with accumulated interest with the beneficiary being Robert A. Martin.

That it is believed that Plaintiff, Donna Saas requested the documents, completed the documents by using the Power of Attorney of Robert A. Martin and returned the documents for the payout of the account held in Trust.

That sometime after the passing of Elsie Martin on February 23, 2019 a check in the amount of $23,395.26 was mailed to 339 Lake Catherine Circle, Fairfield Glade, TN.

That it is uncertain as to the whereabouts of the monies mailed to Robert A. Martin as beneficiary of Elsie Martin's account held in Trust in the amount of $23,395.26.

It is believed that Plaintiff, Donna Saas had Robert A. Martin's mail forwarded to her address and is in possession of the funds paid to Robert A. Martin.

(Paragraph numbering omitted.) As Defendants acknowledge on appeal, the filed accounting lacks a certificate of service.

In August 2021, Defendants filed a new *ex parte* petition for emergency TRO and temporary injunction in the Trial Court. Defendants averred that Father had died at the age of 98 and that Daughter had failed to inform them. They learned this news indirectly and by accident. They again alleged that Daughter had manipulated and coerced Father to execute the POA in her favor and that she had since failed to comply with a discovery request to provide financial accounting for expenditures and income of Father since litigation began. Defendants further alleged that their counsel had been contacted by a vendor that held an asset of Father's in which the beneficiary had been changed to pay the asset to Daughter. Defendants stated that it was unknown what assets of Father's remained. Defendants asked that Father's assets be deposited with the Trial Court for disbursement.

The Trial Court granted the petition, ordering that all remaining assets of every kind be deposited with the Trial Court until the Trial Court held a final hearing and made a final determination as to whether either sibling had mismanaged Father's assets. The Trial Court ordered that Daughter cease and desist from transferring or dissipating Father's assets.

Daughter filed a motion to dissolve the TRO. Defendants filed an amended petition for an emergency TRO and temporary injunction, alleging that Daughter had executed a change in Father's account held by Guaranty Income Life Insurance ("Guaranty Account") making her the sole beneficiary. Defendants alleged that Daughter had coerced and manipulated Father into signing the document. Daughter filed a supplemental motion to dismiss. In an attached declaration by Daughter, she averred that Father had changed the sole beneficiary on the Guaranty Account from Mother to Daughter. She alleged that Father made this change in May 2019 and that he was of sound mind at that time.

After a hearing on August 19, 2021, the Trial Court entered an order addressing the TRO granted in favor of Defendants. The Trial Court ordered that the TRO would be dissolved unless Defendants filed a motion clarifying their petition and demonstrating the exact assets Defendants intended for the order to restrain. The Trial Court ordered Defendants to supply Plaintiffs with a full accounting of the Trust by no later than August 29, 2021. The Trial Court ordered discovery to be completed by December 17, 2021.

In November 2021, the Trial Court entered an order dismissing and dissolving the TRO. The Trial Court noted that it had given Defendants time to identify the accounts that they believed were at issue and that they responded that the only account at issue was the Guaranty Account. The Trial Court extended the discovery deadline to January 31, 2022. By agreement, the discovery deadline was again pushed back to June 24, 2022.

Daughter filed a motion to compel payment from Defendants regarding the GAL fees and TRO bond. The hearing on this motion was set for May 2022. This hearing had to be continued because Defendants' counsel suffered an unexpected medical emergency. Defendants were scheduled to be deposed on May 19, 2022, but Defendants' counsel was still unable to participate in litigation at that point. The depositions were delayed. Due to these delays, trial, which was originally set for August 2, 2022, was pushed back.

Daughter filed a motion to set trial, noting that she had offered multiple dates to Defendants, but that Defendants never identified a date they preferred. Daughter asked the Trial Court to set a date and time that worked for both parties. The Trial Court set trial for December 14, 2022.

On August 24, 2022, Daughter filed and served upon Defendants' counsel amended notice of depositions to be conducted on September 13, 2022. On August 30, 2022, Defendants' counsel filed a motion to withdraw as counsel, noting his health issues. The Trial Court granted the motion and gave Defendants thirty days to retain new counsel.

Daughter filed a motion for the Trial Court to reconsider its order permitting Defendants' counsel to withdraw, explaining that Defendants' counsel possessed his clients' discovery responses that had not yet been provided. She explained that four months prior, Defendants' counsel had informed them that he had discovery supplementation including bank records and trust accountings but that these still needed to be finalized. Daughter further stated that the requested discovery had been in Defendants' counsel's possession since May 2022 but had not yet been provided. She asked that the Trial Court order Defendants' counsel to tender the discovery responses prior to withdrawal. The Trial Court pushed the discovery deadline back to January 6, 2023 and the trial to March 9, 2023.

On January 6, 2023, Daughter filed a motion for discovery sanctions and other relief, pursuant to Tennessee Rule of Civil Procedure 37.01, alleging that Defendants have owed supplemental discovery to Plaintiffs for over two years, Defendants have refused to comply with multiple deposition notices, and Defendants forced Plaintiffs to defeat two attempts at restraining orders and injunctions. Daughter argued that Plaintiffs had issued their first discovery requests in 2019, which resulted in an exchange of discovery. Matters resumed after COVID-19 subsided, and Plaintiffs demanded that Defendants supplement their discovery responses in late 2021. Defendants had failed to provide the updated documentation including the court-ordered Trust accounting.

With respect to depositions, Daughter argued that Defendants had avoided their depositions three separate times. The first depositions were cancelled due to Defendants' counsel's health issues. The second depositions were cancelled because Defendants' counsel moved to withdraw days before. Daughter stated the third attempt to schedule

depositions failed due to a "scheduling error" and that there would be no opportunity to depose Defendants prior to the January 6, 2023 discovery deadline. Daughter sought a default judgment and attorney's fees and, alternatively, a sanction against Defendants only allowing discovery to continue against Defendants.

After a hearing on January 26, 2023, the Trial Court granted Daughter's request for sanctions in an order entered on February 7, 2023. The Trial Court concluded:

> ORDERED that Plaintiffs' counsel shall submit a fee affidavit outlining the fees that Plaintiffs have incurred as a result of preparing for and defending issues relating to Defendants' August 2021 Petition for Temporary Restraining Order, Plaintiffs' Motions to Compel (including as it relates to Defendants failure to supplement their discovery or provide a trust accounting), and Plaintiffs' efforts relating to Defendants' three depositions that were set and canceled. Upon review of said affidavit, this Court will then determine an appropriate fee to award Plaintiffs.

> It is further

> ORDERED that Defendants shall supplement all outstanding discovery and provide a trust accounting to Plaintiffs by February 3, 2023,[1] and that Defendants shall submit themselves to be deposed by February 15, 2023. Should Defendants fail to do abide by these requirements as set forth in this Order, this Court will, upon Plaintiffs' motion, strike Defendants' defenses.

> Lastly, it is also

> ORDERED that Plaintiffs shall submit themselves to be deposed by February 15, 2023, if requested to do so. And, if after party depositions have occurred, the parties believe that mediation will be helpful, this Court will order the same, upon receipt of notice from counsel from both parties requesting the same.

---

[1] The February 3rd deadline had already passed by the time the Trial Court entered this order on February 7th. In her motion to strike Defendants' defenses, Daughter noted:

> Plaintiffs filed the Order as Proposed on January 27, 2023, because counsel for all parties could not agree on the language in the order. However, Defendants never filed a competing order, and Defendants were therefore on notice of the February 7, 2023 Order's terms (and acquiesced to them), as of January 27, 2023.

On February 8, 2023, Daughter filed a motion to strike Defendants' defenses, notifying the Trial Court that Defendants failed to produce an accounting of Trust assets. Daughter alleged:

> Since February 21, 2019, when Plaintiff sent a formal accounting request, Plaintiffs have repeatedly and rightly requested an accounting to which they are lawfully entitled, but Defendant Robert E. Martin has never complied. This is an ongoing saga, as additionally, due to his failure to provide accountings in the past, this Court ordered that he produce one in its August 21, 2021 Order, and again in this Court's February 7, 2023 Order (requiring one to be produced by February 3). But despite his trust obligations, and this Court's many orders requiring him to do so, Robert E. Martin never produced an accounting.

Daughter requested that the Trial Court convert the scheduled trial to a hearing on damages.

The Trial Court granted Daughter's motion, striking Defendants' defenses and denials in their answer. The Trial Court, accordingly, found that liability for Defendants' breaches and alleged conduct had been established as set forth in the petition. The scheduled trial was now set to be a hearing on damages. The Trial Court also addressed the fact that Defendants filed a purported accounting in December 2019, finding that "the submitted document did not accurately reflect trust assets, was not previously provided to Plaintiffs, and further, it did not comport with the requirements of Section 9.12 of the Trust."

After the damages hearing in November 2023, the Trial Court entered its final judgment in an order entered January 11, 2024. The Trial Court noted that liability was established by virtue of its order striking Defendants' defenses and denials. The Trial Court found the following findings of fact relevant to the issues on appeal: Father appointed Son POA and trustee of the Trust in 2018; Son did not fund the Trust; all parties agreed that the American General Life Insurance Company Annuity ("the American Annuity") should have been transferred to and held in the Trust; Son failed to do so; Defendants' actions and inactions resulted in unnecessary litigation and rulings; Defendants never provided an accounting; Plaintiffs noticed Defendants multiple times for depositions all of which were unilaterally canceled shortly before they were to occur; and the only remaining issue was the measure of Daughter's damages.

With respect to Daughter's damages, the Trial Court found that Son never produced an accounting; Son withdrew or transferred a total of $79,000 from Father's bank accounts after becoming POA; Son should have placed the American Annuity in the Trust; the American Annuity was valued at roughly $120,000 at the time of the hearing; Father's intent, although not completely clear, was that the Trust property be split 50/50

between Son and Daughter; Daughter had incurred lost wages in the amount of $1,456 as a result of litigation and incurred attorney's fees and costs totaling $150,070; Son was not credible; and Daughter was more credible.

The Trial Court awarded Daughter her lost wages, her attorney's fees and costs, half of the $79,000 withdrawn and converted by Son, half of the American Annuity, and $20,000 in punitive damages. The Trial Court denied Daughter's claims for emotional damages and prejudgment interest. Defendants timely appealed.

## Discussion

Although not stated exactly as such, Defendants raise the following issues: (1) whether the Trial Court abused its discretion in striking all of their defenses and (2) whether the Trial Court erred in finding that Son breached his fiduciary duty. Daughter requests attorney's fees on appeal.

This Court has previously explained the relevant standard of review and analysis of discovery sanctions as follows:

> Appellate courts review a trial court's decision to impose sanctions and its determination of the appropriate sanction under an abuse of discretion standard. *Alexander v. Jackson Radiology Assoc., P.A.*, 156 S.W.3d 11, 14 (Tenn. Ct. App. 2004) (citing *Lyle v. Exxon Corp.*, 746 S.W.2d 694, 699 (Tenn. 1988) ). An abuse of discretion occurs where the trial court has applied an incorrect legal standard or where its decision is illogical or unreasoned and causes an injustice to the complaining party. *Id.* (citing *Mercer v. Vanderbilt Univ., Inc.*, 134 S.W.3d 121, 131 (Tenn. 2004) ). Discretionary decisions, however, "are not left to a court's inclination, but to its judgment; and its judgment is to be guided by sound legal principles." *State v. Lewis*, 235 S.W.3d 136, 141 (Tenn. 2007) (quoting Martha S. Davis, Standards of Review: Judicial Review of Discretionary Decisionmaking, 2 J. App. Prac. & Process 47, 58 (2000) (citations and internal quotation marks omitted) ). Thus, an abuse of discretion may be found " 'when the trial court has gone outside the framework of legal standards or statutory limitations, or when it fails to properly consider the factors on that issue given by the higher courts to guide the discretionary determination.' " *Lewis*, 235 S.W.3d at 141 (quoting 2 J. App. Prac. & Process at 59). We will not overturn the trial court's decision merely because reasonable minds could reach a different conclusion. *Eldridge v. Eldridge*, 42 S.W.3d 82, 85 (Tenn. 2001).

\* \* \*

Based on the foregoing line of cases, this Court, in *Murray v. Christian Methodist Episcopal Church*, 153 S.W.3d 371, 379 (Tenn. Ct. App. 2004), *perm. app. denied* (Tenn. Oct. 4, 2004), noted that, in other cases in which the trial court's grant of default was affirmed, the failure to respond to discovery: (1) was repeated, *see Galde* [*v. Keritsis*, No. 03A01-9807-CH-00228], 1999 WL 496630 at *3-*4 [(Tenn. Ct. App. July 15, 1999)]; (2) was without reasonable excuse, *see American Steinwinter* [*Investor Grp. v. American Steinwinter, Inc.*], 964 S.W.2d [569] at 574 [(Tenn. Ct. App. 1997)]; *see also Holt* [*v. Webster*], 638 S.W.2d [391] at 394 [(Tenn. Ct. App. 1982)] (affirming the grant of default judgment on finding that there was "no plausible justification for plaintiffs' failure to file timely and complete responses to defendant's interrogatories."); (3) involved perjured discovery responses, *see Potts* [*v. Mayforth*], 59 S.W.3d [167] at 172 [(Tenn. Ct. App. 2001)]; or (4) resulted in a delay of over a year. *See Shahrdar* [*v. Global Housing, Inc.*], 983 S.W.2d [230] at 233 (Tenn. Ct. App. 1998).

Although the actions that will justify the grant of default judgment must be reviewed on a case by case basis, *Murray*, 153 S.W.3d at 379, caselaw dictates that this extreme sanction is appropriate only when "there has been a clear record of delay or contumacious conduct." *Shahrdar*, 983 S.W.2d at 236 (quoting *In re Beckman*, 78 B.R. 516, 517 (M.D. Tenn. 1987) (citation omitted) ("The entry of judgment by default ... is only appropriate where there has been a clear record of delay or contumacious conduct.") ). "Contumacious is defined as 'scornful' or 'recalcitrant.' " *Am. Exp. Centurion* [*v. Lowrey*], No. E2011-01247-COA-R3-CV, 2013 WL 937831, at *5 (Tenn. Ct. App. March 11, 2013) (quoting Bryan Garner, <u>A Dictionary of Modern Legal Usage</u> 220 (2nd ed. 1995) (characterizing the conduct as "egregiously scornful of the judicial process.") ). Contumacious conduct means " '[w]illfully stubborn and disobedient conduct, commonly punishable as contempt of court.' " *Id.* (quoting <u>Black's Law Dictionary</u> 298 (5th ed. 1979) ). Accordingly, "in order to justify the harsh result of dismissal, the party's actions in failing to timely respond to discovery must both tend to cause a delay and be 'scornful' or 'willfully stubborn.' " *Id.*

* * *

By contrast, this Court has reversed a trial court's grant of default judgment in several cases. As discussed above, a trial court's decision to dismiss an action on the basis of discovery abuse is reviewed under the abuse of discretion standard. *Alexander*, 156 S.W.3d at 14. We have held that a trial court acts outside its discretion in dismissing a case for discovery abuse when there is no record of "willful or dilatory conduct,"

- 10 -

*Pegues* [*v. Illinois Cent. R. Co.*,] 288 S.W.3d [350] at 351 [(Tenn. Ct. App. 2008)], or when the non-moving party's failure to respond to discovery was not sufficiently "contumacious." *Murray*, 153 S.W.3d at 378 (citations omitted).

*SpecialtyCare IOM Servs., LLC v. Medsurant Holdings, LLC*, No. M2017-00309-COA-R3-CV, 2018 WL 3323889, at *3, 18-19 (Tenn. Ct. App. July 6, 2018).

Defendants were first ordered to provide an accounting in August 2021, giving them ten days to do so. They did not do so. Over a year later, in January 2023, the Trial Court again ordered Defendants to provide an accounting, explicitly threatening to strike their defenses if they did not do so by February 3, 2023. Defendants, again, failed to comply. At the damages hearing, Son admitted that they never provided an accounting, and his proffered excuse was that there had been no activity to give an accounting for.

As a result, the Trial Court struck Defendants' "defenses and denials in their Answer" and, therefore, found that liability for Defendant's breaches and alleged conduct had been established. In doing so, the Trial Court discounted Defendants' purported accounting in December 2019 because it was not provided to Daughter, did not comport with the Trust's requirements, and did not accurately reflect trust assets. Effectively, the sanction was a default judgment in Daughter's favor in that it rendered all defenses and denials stricken and assigned liability based on her petition. As noted by the Trial Court in its Judgment, it "did not reach this decision lightly."

In their appellate brief, Defendants protest that they submitted to their depositions before the February 15, 2023 deadline, but they acknowledge that they "did not produce any additional documentation or information." They go on to explain that Son was "clearly confused about what his responsibilities were as it relates to being a Trustee," that he thought "the annuity was put in the trust by the attorney as part of the fee," and that there were never any assets in the trust. None of these arguments explain or justify their failure to comply with the Trial Court's orders to provide an accounting.

Much of the other arguments presented by Defendants have to do with the depositions. They argue that the delays in the depositions were not entirely their fault or that they were out of their control given their attorney's health issues. This argument, however, obfuscates the issue. The Trial Court struck their defenses primarily because of their failure to comply with its directives to provide an accounting, not because of the delayed depositions.

Defendants highlight Daughter's counsel's remark that "one piece of paper" could have avoided the issue with the trust accounting, and they insist that they did just that by filing an accounting in 2019. However, a purportedly proper accounting in 2019 does not absolve Defendants of their recalcitrance in ignoring two court orders in 2021 and 2023.

Moreover, Defendants' arguments are contradictory. Defendants simultaneously argue that their failure to comply did not matter because there were no assets in the Trust, while also arguing that they did provide a proper accounting containing assets in 2019. Their argument lacks credibility. Forthrightly complying with either of the Trial Court's orders would have resolved the matter.

The Trial Court specifically found Son not credible, and we find no basis in the record to say otherwise. Given that Defendants offered no credible excuse, had first been ordered to provide the accounting in August 2021, refused to comply with two Trial Court orders, and disregarded the Trial Court's clear warning that it would strike their defenses, we discern no abuse of discretion in the Trial Court's decision to strike their defenses.

Defendants next argue that the Trial Court erred in finding that Son breached his fiduciary duty. Given that the Trial Court struck Defendants' defenses, liability is established so long as the allegations of the complaint are legally sufficient to establish the claim against Son. *Youree v. Recovery House of E. Tenn., LLC*, 705 S.W.3d 193, 205-06 (Tenn. 2025) ("It is well-settled that, notwithstanding the admission of factual allegations associated with a default, a defaulting party does not admit legal conclusions. . . . [T]here must be a sufficient basis in the pleadings for the judgment entered."). Although the allegations of the petition are all that matter to our inquiry at this stage, Defendants make arguments as though their defenses were not stricken. We confine our review to the allegations of the petition.

A plaintiff alleging breach of fiduciary duty must establish the following elements: (1) a fiduciary relationship, (2) breach of the resulting fiduciary duty, and (3) injury to the plaintiff or benefit to the defendant as a result of that breach. *Ann Taylor Realtors, Inc. v. Sporup*, No. W2010-00188-COA-R3-CV, 2010 WL 4939967, at *3 (Tenn. Ct. App. Dec. 3, 2010). Daughter clearly alleged that there was a fiduciary relationship between Father and Son by virtue of his role as attorney-in-fact for his Father and trustee of the Trust; that Son breached this duty in various ways; Son failed to make distributions and provide an accounting; he made a $100,000 distribution from a trust asset to himself; he derogated his obligations as trustee and acted intentionally, willfully, knowingly, and/or recklessly with respect to such distributions; he misappropriated approximately $40,000 to $60,000 from Father's savings account for his own personal use and benefit as Father's attorney-in-fact; and they requested an award of damages, *inter alia*, in the amount of the value of property misappropriated by Son. We, as did the Trial Court, accordingly conclude that Daughter's petition provided a sufficient basis to establish that Son breached his fiduciary duty. Discerning no reversible error, we affirm.

Lastly, Daughter argues that she is entitled to attorney's fees on appeal, citing Tenn. Code Ann. § 35-15-1004(a), which provides: "In a judicial proceeding involving the administration of a trust, the court, as justice and equity may require, may award costs

and expenses, including reasonable attorney's fees, to any party, to be paid by another party or from the trust that is the subject of the controversy." This was a judicial proceeding involving the administration of a trust. We therefore may award attorney's fees and costs on appeal, and such a decision is within the sound discretion of this Court. *Cartwright v. Garner*, No. W2016-01424-COA-R3-CV, 2018 WL 4492742, at *9 (Tenn. Ct. App. Sept. 19, 2018). Given the circumstances of this case, we exercise our discretion to award reasonable attorney's fees, costs, and expenses incurred on appeal by Daughter. We remand to the Trial Court for a determination of the appropriate award.

## Conclusion

For the foregoing reasons, we affirm the Trial Court's judgment and award reasonable attorney's fees, costs, and expenses incurred on appeal to the appellee, Donna Saas. We remand for a determination of the appropriate amount of attorney's fees, costs, and expenses to be awarded to Ms. Saas, as well as collection of costs below. Costs of the appeal are assessed against the appellants, Robert E. Martin and Karen Martin.

_____
D. MICHAEL SWINEY, CHIEF JUDGE

- 13 -